## COMMONWEALTH *vs.* THOMAS MCLAUGHLIN & others.

An indictment on the Gen. Sts. *c.* 161, § 80, and *c.* 168, § 8, charging that the defendant attempted "unlawfully, wilfully and maliciously to administer" poison to a horse, and "in such attempt" did an overt act, sufficiently charges that the attempt, and the intent with which it was made, were unlawful, wilful and malicious.

It is not a material variance, if the evidence admitted to sustain an indictment for filling and saturating a potato with a liquid poison, with intent to administer it to a horse, shows that a hole was made in the potato and filled with bran saturated with the poison, without the potato itself being saturated.

INDICTMENT on the Gen. Sts. *c.* 161, § 80,* and *c.* 168, § 8,†
averring that Thomas McLaughlin, John Flanagan, and Frank
Mulvey, on November 4, 1869, at Lawrence, " did attempt to
commit an offence prohibited by law, to wit, did attempt with
force and arms unlawfully, wilfully and maliciously to administer
to a certain horse, of the value of four thousand dollars, of the
property of John W. Porter and George E. Porter, a large quan-
tity of a certain poison called croton oil, that being an offence

---

* "Whoever wilfully and maliciously kills, maims or disfigures any horses,
cattle or other beasts, of another person, or wilfully and maliciously adminis-
ters poison to any such beasts, or exposes any poisonous substance, with intent
that the same shall be taken or swallowed by them, shall be punished by im-
prisonment in the state prison not exceeding five years, or by fine not exceed-
ing one thousand dollars and imprisonment in the jail not exceeding one year."

† "Whoever attempts to commit an offence prohibited by law, and in such
attempt does any act towards the commission of such offence, but fails in the
perpetration, or is intercepted or prevented in the execution, of the same, where
no express provision is made by law for the punishment of such attempt, shall
be punished," &c.

prohibited by law, and in such attempt did then and there do a certain overt act towards the commission of said offence, to wit, did then and there with force and arms unlawfully, wilfully and maliciously fill and saturate a certain potato with a large quantity, to wit, sixty drops of said croton oil, a poison as aforesaid, and with the said potato so filled and saturated with the said croton oil as aforesaid in their possession, did then and there in the night-time of said day enter the stable of the said John W. Porter and George E. Porter there in said Lawrence situate, and did then and there in the night-time as aforesaid climb over and into the stall in said stable then and there occupied by said horse, with intent then and there to administer to said horse the said poison so prepared in said potato as aforesaid, by then and there giving to said horse the said potato so filled and saturated with said croton oil as aforesaid, to be then and there eaten by him the said horse, but said Flanagan, Mulvey and McLaughlin then and there did fail in the perpetration of said offence, and were intercepted and prevented in the execution of the same ; against the peace of the Commonwealth," &c.

In the superior court, before the jury were empanelled, the defendants filed a motion to quash the indictment, " 1. because said indictment does not allege that the attempt to commit the offence, described therein, was made unlawfully, wilfully or maliciously ; 2. because said indictment does not well set forth an overt act towards the commission of the offence alleged to have been attempted, in that the statement of the acts alleged to have been done does not import or describe an act or acts which would be done in such attempt ; 3. because said indictment does not allege that said overt acts were done with the intent to commit the offence alleged to have been attempted." This motion *Devens,* J., overruled.

On the trial, it appeared that the horse was the property of the Porters, and was matched with four other horses for a race which was to take place on November 5, 1869 ; that on the night preceding the day of the race the horse was kept in a box-stall in a corner of their stable, and they placed a watchman in the stall ; and that about midnight Flanagan climbed into the stall, and the

watchman seized him. The watchman testified that Flanagan was going towards the head of the horse when he was seized; and there was evidence which it was contended in behalf of the Commonwealth had a tendency to show that Mulvey and McLaughlin were just outside of the stable at the time, and had diverted the attention of the hostler by an artifice, in order to enable Flanagan to enter the stable.

It also appeared that the next morning a potato was found among the straw in the stall, and another potato on the sidewalk near the front door of the stable, two hundred and thirty-five feet from the stall; that these potatoes had been cut open and made hollow; and that the cavities in them were filled with bran, which was saturated with croton oil, a substance described in the evidence as " an irritant poison, which is sometimes used as a medicine, but will have a fatal effect if administered in a sufficient quantity." A chemist who examined the potatoes and their contents testified " that the oil had not in any way soaked into the substance of the potato, but that it had run out of the hole and to some extent smeared the outside of the potatoes."

The defendants requested the judge to rule that there was a variance between the averment and the proof, in regard to the potatoes, and that, upon the evidence, they were not " filled and saturated " with croton oil; but the judge instructed the jury " that if the potatoes were prepared by the removal of a part of them, and the cavities filled with bran or meal which was saturated with croton oil, or with a substance consisting of meal and croton oil, it was sufficient for this part of the case."

The defendants also requested a ruling that the jury could not convict, unless they should be satisfied that the purpose of the defendants was to kill the horse; but the judge ruled " that if they did the acts charged in the indictment, intending merely to cause temporary illness and injury to the horse, then they might properly be found guilty upon this indictment."

The jury found the defendants guilty; and they alleged exceptions.

*S. B. Ives, Jr.*, for the defendants.

*C. Allen*, Attorney General, for the Commonwealth.

AMES, J.   It has been decided that an indictment under the Gen. Sts. *c.* 161, § 80, is sufficient if it sets forth the offence in the words of the statute.   Those words import all that is necessary to a legal description of the offence.   The word " wilfully," as used in the statute, means intentionally ; and the word " maliciously " imports a criminal motive, intent or purpose.   *Commonwealth* v. *Brooks*, 9 Gray, 299.   It is impossible that an attempt " unlawfully, wilfully and maliciously " to do a criminal act can itself be otherwise than unlawful, wilful and malicious.   To attempt to commit a wilful and malicious crime imports *ex vi termini* an intent to commit that crime.   The attempt includes the intent.

The criminality implied in the charge against the defendants consists in the character of the crime which they attempted to commit, and not in the overt acts merely.   It is not necessary that the overt acts should be otherwise charged than as acts towards the commission of the offence, with such a description of them as to render it apparent that they were in pursuance of the guilty purpose.   It is sufficiently charged in the indictment that in the attempt, which is equivalent to saying " with the intent," to commit the crime, they prepared the poison, and with it in their possession entered the stable and climbed into the stall where the horse was, with intent then and there to administer, &c.   We think the indictment sufficiently excludes the possibility of any innocent intent on the defendants' part, in any of the acts charged against them. .

The indictment charges that the defendants " filled and saturated " potatoes with croton oil, intending to give them to the horse to eat, and the evidence, although it proved that the poison was contained in the potatoes, showed that they were not " saturated " with it, in the literal sense of the word.   But this sort of variance does not appear to us to be substantial or material. Even in trials for murder, it has been held that a misdescription of the weapon with which the fatal wound was given is unimportant, if the mode of death proved agrees in substance with that charged ; as for instance, in the case of a wound alleged to be with a sword, but shown to have been made with an axe ; or a

blow described as made with a staff, shown to have been with a stone; " and the same, if the death be laid to be by one sort of poisoning, and in truth it be by another." 1 East P. C. 341. *Commonwealth* v. *Macloon*, 101 Mass. 1. *Rex* v. *Phillips*, 3 Camp. 74. *Exceptions overruled.*