COMMONWEALTH *vs.* LINCOLN B. PEASLEE.

Essex.    November 7, 1900. — January 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

In a prosecution under Pub. Sts. c. 210, § 8, providing that "whoever attempts to commit an offence prohibited by law, and in such an attempt does any act towards the commission of such offence," shall be punished as therein provided, where the offence alleged is an attempt to set fire to property with the intention of injuring the insurers thereof, in violation of Pub. Sts. c. 203, § 7, and the case is to be made out by showing a preparation in a certain room of inflammable materials and a solicitation of some one else to set the fire, an indictment drawn under St. 1899, c. 409, must allege such solicitation as one of the overt acts, and if not so alleged it cannot be relied upon as an overt act.

In a trial under Pub. Sts. c. 210, § 8, for an attempt to set fire to property with the intention of injuring the insurers thereof, in violation of Pub. Sts. c. 203, § 7, there was evidence that the defendant, the owner of a building and its contents which were insured at a high valuation, constructed and arranged combustibles in the building in such a way that they were ready to be lighted, and if lighted would have set fire to the building and its contents; that the plan required a candle which was standing on a shelf six feet away to be placed on a piece of wood in a pan of turpentine and lighted; that the defendant offered to pay a man in his employ to go to the building and carry out the plan; that the offer

was refused; and that later the defendant and his employee drove from a distance of some miles towards the building, and when within a quarter of a mile of it the defendant said that he had changed his mind and drove away. *Semble,* that under an indictment properly drawn, the defendant upon this evidence might have been convicted of an indictable offence, — whether to be laid as an attempt or as a solicitation, *quœre.*

INDICTMENT, under Pub. Sts. c. 210, § 8, for an attempt to set fire to property with the intention of injuring the insurers thereof, in violation of Pub. Sts. c. 203, § 7. Trial in the Superior Court, before *Pierce,* J.

The judge overruled a motion to quash the indictment; and the defendant excepted.

At the conclusion of the testimony the defendant requested the judge to instruct the jury that the whole evidence was not sufficient to support the indictment, and that the jury would not be warranted in convicting the defendant thereon. The judge declined to make these rulings; and the defendant excepted. The jury returned a verdict of guilty.

The material portion of the evidence was, in substance, as follows. The building in which the alleged attempt to set fire was committed was situated at Beverly Farms. It was of three stories of wood upon a brick basement. The defendant was engaged in the business of carriage painting and repairing, and in such business occupied the basement and the first floor, and kept the other two floors for his family dwelling-house. The land and building were valued at about $3,200, and were owned by the defendant, but were mortgaged for $3,000, and the insurance on the building was payable to the mortgagee.

At the time alleged there was insurance upon the personal property and household furniture in the building, in the companies named in the indictment, and the evidence tended to show that the actual value of the property on hand was much less than the insurance.

On Monday morning, July 3, 1899, the defendant took his wife and only child to Gardiner, Maine.

One Ferguson, city marshal of Beverly, testified that in consequence of information given to him during the afternoon of July 6, 1899, by one Clark, a young man in the employ of the defendant, he and other officers went to the above described premises at half past eleven o'clock that night. That there was

at this time, in a corner of the varnish room, which was one of the rooms used by the defendant in carrying on his business, an ordinary stove, used for heating the room in cold weather. The fire pot contained paper and rubbish, which showed no indication of fire. On the floor, near the stove, was a dish pan containing turpentine; in the pan of turpentine was a block of wood, and upon the block were small pieces of iron which held the top of the block a little below the surface of the turpentine. Around and in close proximity to the pan was a quantity of excelsior and wooden boxes, and several unstopped tin cans, each containing four or five gallons of turpentine. The excelsior on the floor, under and around the pan and for some distance out from the stove, was more or less saturated with turpentine. Upon a shelf, five or six feet away from the pan, on the opposite side of a door, but in the same room, was a candle of the thick, slow burning kind, ordinarily known and used as a coach candle. This candle was fresh and showed no sign of use or of ignition.

Clark testified that he had worked for the defendant for several years; that he was paid $10 on Saturday, July 1, 1899, by the defendant, for his week's work; that the defendant told him that he need not come to work again until Wednesday morning, July 5, 1899; that at about half past six in the morning of Wednesday, July 5, 1899, he was sent for to come from his lodging in Beverly to a hotel in Beverly; that he went to the hotel; that he was shown to a room, where he found the defendant; that the defendant then told him, in substance, that his business was in a bad way; that he was in debt, and that he had either got to stop or that the place had got to go up; that he told him of the arrangement of the pan of turpentine, excelsior, boxes, and candle as found by the city marshal; that the defendant told him that the plan was to take the candle from the shelf, put it upon the block of wood in the pan of turpentine, ignite it, and leave it to burn down into the turpentine; that the candle would burn three or four hours before igniting the turpentine; that the defendant said the turpentine would eat the candle; that the defendant offered him, first, $25, then $50, to go to the building to do this, and that he refused to do so; that at the defendant's request he did go to Beverly Farms on the morning train

of the same day, took the keys which the defendant gave him, entered the building, looked into the varnish room and saw the arrangement; that he did not notice the candle, but did not pay particular attention; that he and the defendant went to Salem in the evening; that in the railway station in Salem the defendant asked him to get a team, meet the defendant and drive him to Beverly Farms; that they drove to a certain drinking-fountain, beyond which was the defendant's shop, about a quarter of a mile; that neither got out; that the defendant there said that he had changed his mind and turned the horse round and drove immediately back to the station, where the defendant took a late train for Boston.

Clark further testified that on Thursday, July 6, he went to the city marshal and reported what had been done and said by him and by the defendant during the previous day and evening; that he accompanied the marshal on the Thursday night visit of the latter to the defendant's premises; that he then entered the varnish room, and that the condition of things in the varnish room remained unchanged from the condition which he saw on Wednesday morning.

The indictment contained three counts in which the material allegations were the same, alleging an attempt wilfully to burn certain property with the intent thereby to injure the insurer, and each concluding as follows: " And in such attempt did collect, place, and put a certain quantity of spirits of turpentine, a certain quantity of excelsior, and a certain wax or tallow candle in said building, but did fail in the perpetration of said attempted offence, against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided." There was no allegation of solicitation of another to light the collected materials or otherwise to take part in the acts alleged.

The case was argued at the bar in November, 1900, and afterwards was submitted on briefs to all the justices.

*A. P. White,* for the defendant.

*W. S. Peters,* District Attorney, for the Commonwealth.

HOLMES, C. J. This is an indictment for an attempt to burn a building and certain goods therein, with intent to injure the insurers of the same. Pub. Sts. c. 210, § 8. The substantive

offence alleged to have been attempted is punished by Pub. Sts. c. 203, § 7. The defence is that the overt acts alleged and proved do not amount to an offence. It was raised by a motion to quash and also by a request to the judge to direct a verdict for the defendant. We will consider the case in the first place upon the evidence, apart from any question of pleading, and afterwards will take it up in connection with the indictment as actually drawn.

The evidence was that the defendant had constructed and arranged combustibles in the building in such a way that they were ready to be lighted, and if lighted would have set fire to the building and its contents. To be exact, the plan would have required a candle which was standing on a shelf six feet away to be placed on a piece of wood in a pan of turpentine and lighted. The defendant offered to pay a young man in his employment if he would go to the building, seemingly some miles from the place of the dialogue, and carry out the plan. This was refused. Later the defendant and the young man drove toward the building, but when within a quarter of a mile the defendant said that he had changed his mind and drove away. This is as near as he ever came to accomplishing what he had in contemplation.

The question on the evidence, more precisely stated, is whether the defendant's acts come near enough to the accomplishment of the substantive offence to be punishable. The statute does not punish every act done toward the commission of a crime, but only such acts done in an attempt to commit it. The most common types of an attempt are either an act which is intended to bring about the substantive crime and which sets in motion natural forces that would bring it about in the expected course of events but for an unforeseen interruption, as in this case if the candle had been set in its place and lighted but had been put out by the police, or an act which is intended to bring about the substantive crime and would bring it about but for a mistake of judgment in a matter of nice estimate or experiment, as when a pistol is fired at a man but misses him, or when one tries to pick a pocket which turns out to be empty. In either case the would-be criminal has done his last act.

Obviously new considerations come in when further acts on

the part of the person who has taken the first steps are necessary before the substantive crime can come to pass. In this class of cases there is still a chance that the would-be criminal may change his mind. In strictness, such first steps cannot be described as an attempt, because that word suggests an act seemingly sufficient to accomplish the end, and has been supposed to have no other meaning. *People* v. *Murray*, 14 Cal. 159, 160. That an overt act although coupled with an intent to commit the crime commonly is not punishable if further acts are contemplated as needful, is expressed in the familiar rule that preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor although there is still a *locus penitentiæ* in the need of a further exertion of the will to complete the crime. As was observed in a recent case, the degree of proximity held sufficient may vary with circumstances, including among other things the apprehension which the particular crime is calculated to excite. *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22. (See also *Commonwealth* v. *Willard*, 22 Pick. 476.) A few instances of liability of this sort are mentioned on the page cited.

As a further illustration, when the servant of a contractor had delivered short rations of meat by the help of a false weight which he had substituted for the true one, intending to steal the meat left over, it was held by four judges, two of whom were Chief Justice Erle and Mr. Justice Blackburn, that he could be convicted of an attempt to steal. *Regina* v. *Cheeseman*, L. & C. 140; *S. C.* 10 W. R. 255. So lighting a match with intent to set fire to a haystack, although the prisoner desisted on discovering that he was watched. *Regina* v. *Taylor*, 1 F. & F. 511. So getting into a stall with a poisoned potato, intending to give it to a horse there, which the prisoner was prevented from doing by his arrest. *Commonwealth* v. *McLaughlin*, 105 Mass. 460. See *Clark* v. *State*, 86 Tenn. 511. So in this Commonwealth it was held criminal to let a house to a woman of ill fame with intent that it should be used for purposes of prostitution, although it would seem that the finding of intent meant only knowledge of the intent of the lessee. *Commonwealth* v. *Harring-*

ton, 3 Pick. 26. See *Commonwealth* v. *Willard*, 22 Pick. 476, 478. Compare *Brockway* v. *People*, 2 Hill, 558, 562. The same has been held as to paying a man to burn a barn, whether well laid as an attempt or more properly as soliciting to commit a felony. *Commonwealth* v. *Flagg*, 135 Mass. 545, 549. *State* v. *Bowers*, 35 So. Car. 262. Compare *Regina* v. *Williams*, 1 C. & K. 589; *S. C.* 1 Denison, 39. *McDade* v. *People*, 29 Mich. 50, 56. *Stabler* v. *Commonwealth*, 95 Penn. St. 318. *Hicks* v. *Commonwealth*, 86 Va. 223.

On the other hand, making up a false invoice at the place of exportation with intent to defraud the revenue is not an offence if not followed up by using it or attempting to use it. *United States* v. *Twenty-eight Packages*, Gilpin, 306, 324. *United States* v. *Riddle*, 5 Cranch, 311. So in *People* v. *Murray*, 14 Cal. 159, the defendant's elopement with his niece and his requesting a third person to bring a magistrate to perform the marriage ceremony, was held not to amount to an attempt to contract the marriage. But the ground on which this last decision was put clearly was too broad. And however it may be at common law, under a statute like ours punishing one who attempts to commit a crime "and in such attempt does any act towards the commission of such offence" (Pub. Sts. c. 210, § 8,) it seems to be settled elsewhere that the defendant could be convicted on evidence like the present. *People* v. *Bush*, 4 Hill, 133, 134. *McDermott* v. *People*, 5 Parker Cr. Rep. 102. *Griffin* v. *State*, 26 Ga. 493. *State* v. *Hayes*, 78 Mo. 307, 316. See *Commonwealth* v. *Willard*, 22 Pick. 476. *People* v. *Bush* is distinguished in *Stabler* v. *Commonwealth* as a decision upon the words quoted. 95 Penn. St. 322.

Under the cases last cited we assume that there was evidence of a crime and perhaps of an attempt, — the latter question we do not decide. Nevertheless, on the pleadings a majority of the court is of opinion that the exceptions must be sustained. A mere collection and preparation of materials in a room for the purpose of setting fire to them, unaccompanied by any present intent to set the fire, would be too remote. If the accused intended to rely upon his own hands to the end, he must be shown to have had a present intent to accomplish the crime without much delay, and to have had this intent at a time and place

where he was able to carry it out. We are not aware of any carefully considered case that has gone further than this. We assume without deciding that that is the meaning of the indictment, and it would have been proved if for instance the evidence had been that the defendant had been frightened by the police as he was about to light the candle. On the other hand, if the offence is to be made out by showing a preparation of the room and a solicitation of some one else to set the fire, which solicitation if successful would have been the defendant's last act, the solicitation must be alleged as one of the overt acts. It was admissible in evidence on the pleadings as they stood to show the defendant's intent, but it could not be relied on as an overt act unless set out. The necessity that the overt acts should be alleged has been taken for granted in our practice and decisions, (see e. g. *Commonwealth* v. *Sherman,* 105 Mass. 169 ; *Commonwealth* v. *McLaughlin,* 105 Mass. 460, 463 ; *Commonwealth* v. *Shedd,* 140 Mass. 451, 453,) and is expressed in the forms and directions for charging attempts appended to St. 1899, c. 409, § 28 and § 2. *Commonwealth* v. *Clark,* 6 Gratt. 675. *State* v. *Colvin,* 90 No. Car. 717. The solicitations were alleged in *McDermott* v. *People.* In New York it was not necessary to lay the overt acts relied upon. *Mackesey* v. *People,* 6 Parker Cr. Rep. 114, 117, and New York cases *supra.* See 3 Encyc. Pl. & Pr., " Attempts," 98. A valuable collection of authorities concerning the crime will be found under the same title in 3 Am. & Eng. Encyc. of Law (2d ed.). If the indictment had been properly drawn we have no question that the defendant might have been convicted.

*Exceptions sustained.*