UNITED STATES of America

v.

**Richard C. REID, Defendant.**

**No. CR.A. 02–10013–WGY.**

United States District Court, D. Massachusetts.

June 11, 2002.

See, also, 2001 WL 1688908.

---

20. *See Petrey,* 246 F.3d at 565.

21. *See id.*

22. *Id.*

23. *Id.*

24. 38 F.Supp.2d 1096 (D.Minn.1998).

25. *Id.* at 1101.

Stephen G. Huggard, Washington, DC, for U.S.

Owen S. Walker, Office of the Federal Defender, Tamar R. Birckhead, Federal Defender Office, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. Introduction

Is an airplane a "mass transportation vehicle" as that phrase is used in section 801 of the USA PATRIOT Act of 2001, Pub.L. No. 107–56, 115 Stat. 272, 374–76 (codified at 18 U.S.C. § 1993) ("section 1993"), a comprehensive anti-terrorism law enacted in the wake of September 11. That is the question raised by Richard C. Reid ("Reid"), who is accused of attempting to detonate an explosive device in his shoe while aboard an international flight from Paris to Miami that was diverted to Boston after his attempt was foiled by the flight crew and other passengers. If the answer to this question is no, as Reid suggests, then Count Nine of the indictment against him, which alleges that he attempted to "wreck, set fire to, and disable a mass transportation vehicle," in violation of section 1993, *see* Indictment at 11,[1] must be dismissed.

## II. Background

The charges against Reid arise out of an incident on December 22, 2001, on American Airlines Flight 63 ("Flight 63"). According to Magistrate Judge Dein's Memorandum and Order dated December 28, 2001 [Docket No. 3] regarding probable cause and the government's motion to detain Reid, there is probable cause to believe the following facts:

Flight 63 was en route from Paris to Miami until Reid created a disturbance on board that caused the aircraft to be diverted to Boston. After one of the flight attendants smelled what she thought was a match, she observed Reid place a match in his mouth. She alerted the captain over

---

1. A copy of the indictment is available at http:// news.findlaw.com/hdocs/docs/terror-ism/usreid011602ind.html (visited June 10, 2002).

the intercom system to what she had seen, and when she returned a few moments later, she saw Reid light another match. According to the flight attendant, Reid appeared to be trying to light the inner tongue of his sneaker, from which a wire was protruding. The attendant tried to stop Reid from lighting his sneaker, but he shoved her into the bulkhead and pushed her to the floor. She got up and ran to get water, at which point a second flight attendant tried to stop Reid. Reid bit the second attendant on the thumb. Shortly thereafter, the first flight attendant returned and threw water in Reid's face. At this point, several passengers came to the aid of the flight attendants and restrained Reid for the duration of the flight. They also injected him with sedatives that were on board the aircraft.

Preliminary laboratory analysis has revealed that both of Reid's sneakers contained "a 'functioning improvised explosive device,' i.e., 'a homemade bomb.'" Dein Order at 4. Had the sneakers been placed against the wall of the aircraft and detonated, they might have been able to blow a hole in the fuselage, potentially causing the aircraft to crash.

## III. Discussion

In relevant parts, section 1993 states: "whoever willfully wrecks, derails, sets fire to, or disables a mass transportation vehicle ... [or] attempts, threatens, or conspires to do any of the aforesaid acts, shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1993(a)(1), (a)(8). The phrase "mass transportation" is defined by a cross-reference to section 5302(a)(7) of Title 49 of the United States Code ("section 5302"), "except that the term shall include schoolbus, charter, and sightseeing transportation." 18 U.S.C. § 1993(c)(5). Section 5302 defines "mass transportation" as

"transportation by a conveyance that provides regular and continuing general or special transportation to the public." 49 U.S.C. § 5302(a)(7). In contrast to the phrase "mass transportation," the word "vehicle" is given no explicit definition in section 1993, nor is it defined in section 5302.

Reid argues that an airplane is neither a "vehicle" nor engaged in "mass transportation," as those words are used in section 1993. The Court addresses these arguments in turn, but first it considers an argument made by Reid that section 1993 does not provide a punishment for attempt offenses.

## A. Attempt Liability Under Section 1993

■ Section 1993 enumerates a series of eight prohibited acts involving mass transportation providers. The final category punishes a person who "willfully attempts, threatens, or conspires to do any of the aforesaid acts." 18 U.S.C. § 1993(a)(8). The statute also contains a punishment provision, which states that an offender

shall be fined under this title or imprisoned not more than twenty years, or both, if such act is committed, *or in the case of a threat or conspiracy such act would be committed,* on, against, or affecting a mass transportation provider engaged in or affecting interstate or foreign commerce, or if in the course of committing such act, that person travels or communicates across a State line in order to commit such act, or transports materials across a State line in aid of the commission of such act.

*Id.* § 1993(a) (emphasis added).

Reid argues that the penalty provision does not apply to attempts because it fails to mention the term "attempt," even though it does mention the words "threat" and "conspiracy," which are grouped to-

gether with attempts in subsection (a)(8). Reid also contends that the phrase "such act" in the punishment provision of section 1993 refers only to completed acts enumerated in subsections (a)(1) through (a)(7), and not to the inchoate offenses proscribed in subsection (a)(8), including attempts. This is significant, according to Reid, because it means that an attempt, rather than being punished as a committed act, could only be punished if it was mentioned, along with threats and conspiracies, as an act that could be punished if it "would be committed." Because it is not so mentioned along with threats and conspiracies, it is not subject to punishment under section 1993.

According to Reid, if "such act" is construed to apply to attempt offenses, portions of the punishment provision will be rendered superfluous. For instance, if "such act" is read to include those acts enumerated in subsection eight (the inchoate offenses), then "such act" would include threatening and conspiring. But because threats and conspiracies are already enumerated separately following "such act" in the punishment provision, reading that phrase to comprise threats and conspiracies would make the explicit reference to those offenses gratuitous. Additionally, if "such act" embraces attempts, the requirement that "in the course of commit-

ting such act, that person travel[ ] or communicate[ ] across a State line in order to commit such act" might become meaningless, because one does not travel or communicate across state lines in order to commit an attempt, but rather to commit the crime itself. In Reid's view, reading section 1993 in this manner would offend the principle of statutory construction that courts should "disfavor interpretations of statutes that render language superfluous," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *accord Atlantic Fish Spotters Ass'n v. Evans*, 206 F.Supp.2d 81, 85 (D.Mass.2002).

While it is true that courts should strive to avoid reading a statute in a way that renders some of the language within it unnecessary, courts should strive harder to avoid reading a statute in a way that renders it nonsensical. Reid's proposed construction of section 1993 would lead to an absurd result: an act that is clearly proscribed by the express language of the statute, 18 U.S.C. § 1993(a)(8), would not be punishable under that statute, even though the statute establishes a punishment for every other act proscribed therein. The possibility that reading the statute to punish attempts would render other words within the statute gratuitous[2] does

---

**2.** The Court does not necessarily agree that reading the phrase "such act" within the punishment provision of section 1993 to comprise attempt crimes would inject surplusage into the statute. Reid's argument rests on the assumption that an attempt is not an act separate from the offense attempted. An attempt crime, however, punishes the act of taking a "substantial step" toward the completion of a criminal act, beyond "mere preparation." *United States v. Rivera–Sola*, 713 F.2d 866, 869 (1st Cir.1983) ("Mere intention to commit a crime can never amount to an attempt. It is absolutely essential that the defendant, with the intent of committing a particular crime, perform some overt act in

furtherance of the criminal scheme."). *See generally Commonwealth v. Peaslee*, 177 Mass. 267, 59 N.E. 55 (1901) (Holmes, J.) (discussing the act requirement of attempt crimes). It is therefore easy to imagine someone crossing or communicating across state lines, for instance, to complete some essential link in the chain of an act prohibited by section 1993, such as purchasing explosives to be carried on board the aircraft. Of course, threats and conspiracies also require acts—the acts of threatening an intent to commit a crime and performing an overt act in furtherance of the conspiracy, respectively. But it is not inconceivable that Congress viewed an attempt to commit any of the acts mentioned

not alone compel the Court read the statute as Reid proposes, for it is well understood that "[r]edundancies across statutes are not unusual events in drafting," *Germain*, 503 U.S. at 253, 112 S.Ct. 1146. This Court is of opinion that it is more important in this case to read the statute so as to avoid an absurd result, *see United States v. X–Citement Video*, 513 U.S. 64, 68–69, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), one that would be contrary to the plain purpose of the statute, than it is to make every word of the statute meaningful. The Court therefore rejects Reid's argument that Count Nine should be dismissed on the ground that section 1993 provides no punishment for attempt crimes.

### B. Is an Aircraft Engaged in "Mass Transportation"?

■ Reid next argues that aircraft such as Flight 63 are not engaged in "mass transportation" as that phrase is used in section 1993. According to Reid, "mass transportation" "connotes buses, trolleys, subways, commuter trains, ferries—the means by which the mass of people, particularly in congested areas, get from one place to another in public conveyances," Def.'s Mot. at 4, particularly in light of the fact that the definition of "mass transportation" found in section 1993 is a cross-reference to a portion of the United States

Code that addresses urban mass transit, *id.* at 4–5. The government counters that the language in section 1993 and the cross-reference defining "mass transportation" so clearly encompasses aircraft that the Court need not concern itself with the nature of the portion of the United States Code in which the cross-reference is located.

As noted earlier, the phrase "mass transportation" is defined principally by a cross-reference to section 5302(a)(7) of Title 49 of the United States Code ("section 5302").[3] Section 5302 defines "mass transportation" as "transportation by a conveyance that provides regular and continuing general or special transportation to the public." 49 U.S.C. § 5302(a)(7). Section 1993 expands the definition supplied by section 5302, however, by adding that "the term shall include schoolbus, charter, and sightseeing transportation," 18 U.S.C. § 1993(c)(5), words that are otherwise excluded from the definition found in section 5302, *see* 49 U.S.C. § 5302(a)(7). Reading section 1993 and section 5302 in conjunction yields the following definition of "mass transportation": "transportation by a conveyance that provides regular and continuing general or special transportation to the public." The question for the Court is whether these words may be read to encompass aircraft.

---

in subsections (a)(1) through (a)(7) as sufficiently similar to those acts to warrant lumping attempts together with those acts in the phrase "such act," while mentioning threats and conspiracies separately to eliminate any doubt that those offenses are subject to the same penalty as successful *or unsuccessful* efforts (attempts) to commit the acts proscribed in subsections (a)(1) through (a)(7). This is certainly more probable than Reid's suggestion that Congress intended to make attempts illegal, but deliberately chose not to punish them.

3. The parties appear unable to disaggregate the term "mass transportation" from "vehicle." By providing a separate definition for "mass transportation" Congress indicated that there were two operative terms—"mass transportation" and "vehicle." Only one of those terms, "mass transportation," is defined in section 1993 by reference to section 5203. As is discussed in Part III.C below, Congress defined "vehicle" in a separate section, 1 U.S.C. § 4. Further, the parties did not discuss, nor does this opinion address, whether "mass transportation" modifies only "vehicle" or both "vehicle" and "ferry."

In answering this question, the Court "begins with the language of the statute. And where the statutory language provides a clear answer," the Court ends there as well. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (citation and internal quotation marks omitted). In determining whether the text of the statute provides a clear answer to the question presented by Reid, the Court accords each word found within the statute its ordinary or natural meaning, *e.g., Bailey v. United States*, 516 U.S. 137, 144–45, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), bearing in mind that "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used," *Deal v. United States*, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993).

The Court holds that an aircraft of the type involved here engages in "mass transportation" as that phrase is defined in section 5302. Simply put, commercial aircraft transport large numbers of people every day. Certainly an aircraft of the kind that Reid boarded on December 22, 2001, provides "regular and continuing general or special transportation to the public." Flight 63 is one of a number of flights departing daily from Paris to Miami (hence it is "regular and continuing");[4] any individual who pays for a ticket and has the proper identification may board (hence it is available "to the public").

Reid attempts to dislodge the definition of "mass transportation" from this com-mon-sense understanding of the phrase, an understanding that is buttressed by the broad language of section 5302, by pointing to the fact that section 5302 is part of a section of the United States Code, Chapter 53 of Title 49, which addresses urban mass transportation systems. Def.'s Mot. at 4–5.[5] Reid looks to the gestalt of Chapter 53, along with the titles of some of the provisions of Chapter 53, as a way to narrow the definition of "mass transportation" beyond what the words of section 5302 will allow when read in their ordinary or natural way. While context matters, it matters only insofar as it illuminates the meaning of words that are otherwise ambiguous. *See Hughes Aircraft Co.*, 525 U.S. at 438, 119 S.Ct. 755 ("[A]nalysis [of the meaning of a statute] begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well." (citation and internal quotation marks omitted)). Moreover, "[t]he title of a statute ... cannot limit the plain meaning of the text.... [I]t is of use only when it sheds light on some ambiguous word or phrase." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (citation and internal quotation marks omitted); *accord Carter v. United States*, 530 U.S. 255, 267, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). Here, there is no ambiguity in the words used in section 5302 and section 1993: Flight 63 was providing regular and continuing general transportation to the public when Reid boarded it on December 22, 2001. Thus, Reid's argument that the

---

4. An internet search performed on June 10, 2002, revealed that Flight 63 is one of six American Airlines flights originating at Charles de Gaulle Airport in Paris on Saturdays—the same day of the week as the date of the incident here—that passengers may take to get to Miami International Airport. Flight 63 is the only non-stop, direct American Airlines flight from Paris to Miami, however.

5. Chapter 53 of Title 49 is entitled "Mass Transportation." Chapter 53 deals with urban transit, such as trains, subways, and bus systems, or with what might be called "intramodal" transportation, i.e., transportation within cities, in contrast to Chapter 55 of Title 49, entitled "Intermodal Transportation," which deals with transportation between cities.

meaning of "mass transportation" should be guided by the fact that section 5302 is found in a portion of the United States Code dealing with urban mass transportation asks this Court to draw from a broader context than is necessary to ascertain the meaning of "mass transportation." The Court is satisfied that the definition provided by section 5302 and broadened by section 1993—"transportation that provides regular and continuing general or special transportation to the public"—when read in an ordinary or natural way, encompasses aircraft of the kind at issue here.

### C. Is an Aircraft a "Vehicle"?

■ Finally, Reid argues that an airplane is not a "vehicle." He points to a number of dictionaries that define the word vehicle in a way that could not be read to include aircraft. The second edition of the *Random House Dictionary of the English Language* (1987), for instance, defines vehicle as "a conveyance moving on wheels, runners, tracks, or the like, as a cart, sled, automobile, or tractor, etc." Def.'s Mot. at 3. The government responds with some dictionary definitions of its own, definitions that are broad enough to include aircraft. An example is found in the seventh edition of *Black's Law Dictionary* (1999), which defines vehicle as "any conveyance used in transporting passengers or merchandise by land, water, or air." Gov't's Opp'n at 9.

It is not entirely surprising that the parties resort to a battle of dictionaries to resolve the issue, as section 1993 itself provides no definition of the word "vehicle" the way it does for the phrase "mass transportation," and the Supreme Court has on occasion resorted to dictionaries to define words that are not otherwise de-

fined in a statute. *E.g., Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002); *Tyler v. Cain*, 533 U.S. 656, 662, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). It is surprising, however, that the parties neglect to include in their litanies of definitions the definition given to the word "vehicle" by Congress.

The Dictionary Act of the United States Code, 1 U.S.C. § 1 *et seq.*, provides general definitions for a handful of words appearing within the code, along with general rules of construction, that apply to the entire code in the absence of a more specific indication within the statute being analyzed. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 200, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("[C]ourts would hardly need direction [from the Dictionary Act] where Congress had thought to include an express, specialized definition for the purpose of a particular Act; ordinary rules of statutory construction would prefer the specific definition over the Dictionary Act's general one."). Although the Dictionary Act defines but a few words appearing in the code, the word "vehicle" is one of them. It states that "[t]he word 'vehicle' includes every description of carriage or other artificial contrivance used, or capable of being used, as a means of transportation *on land*." 1 U.S.C. § 4 (emphasis added).

In a Supreme Court case of some vintage, *McBoyle v. United States*, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931), Justice Holmes wrote for the court that an individual could not be punished for stealing an airplane under a statute that prohibited stealing any "self-propelled vehicle not designed for running on rails." *Id.* at 26, 51 S.Ct. 340. In so holding, the Supreme Court observed that the definition of "vehicle" supplied by the Dictionary Act did not include an aircraft. *Id.*[6]

6. The Court also noted that "in everyday speech 'vehicle' calls up the picture of a thing

In the seventy-one years since *McBoyle*, Congress has never amended the Dictionary Act to give the word "vehicle" a broader meaning. Congress has, however, amended the Dictionary Act recently, *e.g.*, Defense of Marriage Act, Pub.L. No. 104–199, § 3(a), 110 Stat. 2419 (1996) (creating 1 U.S.C. § 7, which defines "marriage" and "spouse"), which suggests that the Dictionary Act is not an obscure, forgotten portion of the United States Code, but instead remains vital to the process of interpreting the rest of the code.

The narrow definition of the word "vehicle" set out in the Dictionary Act and clarified by the Supreme Court in *McBoyle* is consistent with the general structure of the United States Code, which distinguishes among three types of conveyances: vessels, which provide transportation on water, 1 U.S.C. § 3; vehicles, which provide transportation on land, *id.* § 4; and aircraft, which provide transportation through the air, 49 U.S.C. § 40102(a)(6). A number of statutory provisions recognize this distinction. For example, a provision of the immigration laws makes inadmissible to the United States any alien who engages in terrorist activities, defined to include "[t]he highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle)." 8 U.S.C. § 1182(a)(3)(B)(iii)(I). A customs law provides definitions of several words, including vessel and vehicle, and in both of these definitions expressly excludes aircraft. 19 U.S.C. § 1401(a), (b). A criminal law makes it illegal to import or export a "motor vehicle ..., vessel, [or] aircraft" known to have been stolen. 18 U.S.C. § 553(a)(1). An armed forces provision authorizes the Secretary of Defense to institute a system of reporting to Congress on the readiness of the armed forces, including a measurement of "the extent to which units of the armed forces remove serviceable parts, supplies, or equipment from one vehicle, vessel, or aircraft in order to render a different vehicle, vessel, or aircraft operational." 10 U.S.C. § 117(c)(7). A conservation law states that any individual who traffics in fish, wildlife, or plants in criminal violation of the endangered species laws is subject to forfeiture of "[a]ll vessels, vehicles, aircraft, and other equipment used to aid" in the trafficking of the endangered species. 16 U.S.C. § 3374. These are but a few examples of a pattern that recurs throughout the code. *See also, e.g.*, 8 U.S.C. § 1225(d)(1); *id.* § 1324(b)(1); *id.* § 1357(a)(3); 10 U.S.C. § 2401a(b); 16 U.S.C. § 19jj–1(b); *id.* § 668b(b); *id.* § 2403(a)(8); *id.* § 2409(d)(2); 18 U.S.C. § 659; *id.* § 682(a)(6)(A)(i); *id.* § 1956(c)(4); 19 U.S.C. § 1433; *id.* § 1459(a); *id.* § 1594(a).

Indeed, Title 18 of the code contains a separate provision making illegal the same acts proscribed in section 1993, but with respect to aircraft in particular. Section 32 of Title 18 subjects to the same punishment as section 1993 any individual who "willfully sets fire to, damages, destroys, disables, or wrecks any aircraft in the special aircraft jurisdiction of the United

---

moving on land," not something that flies through the air. *McBoyle*, 283 U.S. at 25, 51 S.Ct. 340. Although the Eleventh Circuit, in a more recent opinion, has adopted that portion of *McBoyle* holding that "vehicle" does not encompass aircraft, *Certain British Underwriters at Lloyds of London v. Jet Charter Serv., Inc.*, 789 F.2d 1534, 1537 (11th Cir.1986), other courts have rejected that position and held that in modern parlance "vehicle" does encompass aircraft, *e.g., McReynolds v. Municipal Court*, 207 N.W.2d 792 (Iowa 1973). When Congress uses "vehicle," however, absent a contrary statutory indication, the Dictionary Act definition applies irrespective of the "man-on-the-street" interpretation of "vehicle."

States," 18 U.S.C. § 32(a)(1), and any individual who "attempts or conspires" to do the same, *id.* § 32(a)(7).[7] In the Court's view, the structure of the United States Code provides compelling evidence that the word "vehicle" is used in a very particular manner within the code, a manner separate and distinct from the word "aircraft." [8]

In the event that any doubt remains about the fact that the word "vehicle" does not comprise aircraft, the Court notes that the legislative history of the USA PATRIOT Act further supports the notion that airplanes are not within the ambit of section 1993. Senator Leahy, one of the sponsors of the bill, made the following remarks during his presentation of the bill to the Senate for final vote:

> Just last week, a Greyhound bus crashed in Tennessee after a deranged passenger slit the driver's throat and then grabbed the steering wheel, forc[ing] the bus into oncoming traffic. Six people were killed in the crash. *Because there are currently no federal law[s] addressing terrorism of mass transportation systems, however, there may be no federal jurisdiction over such a case,* even if it were committed by suspected terrorists. Clearly, there is an urgent need for strong criminal legislation to deter attacks against mass transportation systems. Section 801 [section 1993] will fill this gap.

7. Count Seven of the indictment charges Reid with violating this statute. Indictment at 8. At this juncture, the Court notes that even if it were to allow the government to proceed under Count Nine of the indictment, a problem would arise once the jury is empaneled and sworn, at which point Reid's rights under the Double Jeopardy Clause of the Fifth Amendment attach, *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). This is because Count Seven and Count Nine appear to contain elements that, with respect to Reid's alleged conduct, are identical. Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. 180. If the answer to the question posed in *Blockburger* is no—if there is no additional fact element to be proved in order to convict the defendant of two separate crimes—the defendant cannot be punished for violating both statutes under the Fifth Amendment. *Brown v. Ohio,* 432 U.S. 161, 164–66, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In this case, section 32 appears to have the same elements of proof as section 1993. The only difference is that section 32 refers to "any aircraft," while section 1993 refers to "a mass transportation vehicle." Because the mass transportation vehicle at issue here is an aircraft, there is no factual element required to convict Reid of violating section 1993 that is not required to convict Reid of violating section 32, or vice versa.

Of course, the presence of a *Blockburger* issue does not compel a court to declare a statute unconstitutional, or even to construe it narrowly to avoid constitutional difficulty. *See Brown,* 432 U.S. at 165, 97 S.Ct. 2221 ("[T]he ... double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments."). Rather, it merely requires that the government elect between the two charges prior to trial, or that the Court punish the defendant for only one of the offenses in the event of conviction. *Id.* This Court raises the issue simply to observe that, even if it were to decline to dismiss Count Nine at this point in the proceedings, it is very likely that Reid could not be punished for violating both section 32 and section 1993. In practical terms, then, the result would be the same.

8. Moreover, the word "vehicle" is used separately from the word "ferry" in section 1993. To read the word "vehicle" as expansively as the government urges would render Congress's inclusion of the word "ferry" unnecessary.

147 Cong. Rec. S10,551 (daily ed. Oct. 11, 2001) (statement of Sen. Leahy) (emphasis added). Senator Leahy's comments suggest that section 1993 was intended not to provide additional punishment for destruction or attempted destruction of aircraft, but rather to ensure that other modes of transportation, vulnerable to terrorist attack but believed to be outside the reach of the federal criminal laws, come within the reach of those laws. This legislation was intended to "fill in the gaps" and address modes of transportation that Congress had not already specifically protected.

There were existing federal laws addressing terrorist acts against airplanes before September 11, 2001, and Reid has been charged under these laws. As mentioned earlier, Count Seven of the indictment charges Reid with attempted destruction of an aircraft, in violation of 18 U.S.C. § 32. Indictment at 8. In addition, Count Three of the indictment charges Reid with violating 49 U.S.C. § 46505(b)(3) and (c), which makes it illegal to place or attempt to place an explosive device on board an aircraft. Indictment at 4. Counts Five and Six of the indictment allege that Reid interfered with flight crew members during the performance of the crew members' duties by assaulting or intimidating them, in violation of 49 U.S.C. § 46504. Indictment at 6–7. As the indictment against Reid illustrates, a comprehensive patchwork of laws existed prior to the enactment of the USA PATRIOT Act that address acts of terrorism against aircraft.

The government argues that the legislative history mentioned above suggests that what motivated Congress in passing section 1993 was to ensure that *acts of terrorism* against mass transportation systems, including aircraft, were criminalized. In other words, Senator Leahy's comments reflect concern that acts of terrorism generally might not be federal crimes, not that attacks against Greyhound buses, for example, were not federal crimes. The Court finds this argument unpersuasive. The government's argument does not square with the language of section 1993, particularly as it relates to section 32, which proscribes similar acts against aircraft. A comparison of these two statutes reveals that there is no difference in the two provisions in terms of the *acts* that are proscribed, except in ways that are not relevant here. Section 1993, for instance, makes it unlawful to "derail" a mass transportation vehicle, but that would appear to apply only to trains. There is no new proscription of acts of terrorism, however defined, in section 1993 that is not also found in section 32. Instead, the key distinction between section 1993 and section 32 lies in the type of conveyance that is protected by the provision.

According to the government, this form of reasoning does not advance Reid's cause, because section 1993 is necessarily duplicative no matter how it is read. The government contends that destruction of a subway train or bus is already addressed in separate statutes,[9] just as is destroying an airplane, and thus construing section 1993 to cover only buses and trains renders the statute entirely gratuitous, as it would proscribe no new conduct. The government points to the phrase "motor vehicle"—defined as "every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers," 18

---

9. *See, e.g.,* 18 U.S.C. § 33 (Destruction of motor vehicles); 49 U.S.C. § 5104(b) (Removal, destruction of or interference with the transportation of hazardous materials); 18 U.S.C. §§ 175, 229, 831 (Use of biological, chemical, or nuclear weapons, respectively); *see also* 18 U.S.C. § 2331 *et seq.* (proscribing terrorism generally).

U.S.C. § 31(a)(6)—as evidence that much of what Congress sought to cover in section 1993 was already covered elsewhere. The Court agrees that this definition almost certainly encompasses buses, although it is an open question whether it covers trains, subway systems, and other forms of mass transportation.

The Court disagrees, however, that this argument compels the Court to include aircraft within the definition of "vehicle." It may be true that the one form of transportation (buses) that motivated Congress (or at least one of its members) to pass the law in the first place was already covered by pre-existing law. It may also be true that the outer limits of the word "vehicle" are fuzzy and imprecise. These factors do not dissuade the Court from its ultimate conclusion. The clear distinction within the United States Code between vehicles and aircraft, the legislative history of section 1993 suggesting a concern with attacks on buses or similar conveyances, and the variety of pre-existing criminal laws addressing attacks against aircraft, outweigh countervailing factors and lead the Court to conclude that "vehicle," as it is used in section 1993, does not comprise aircraft.

## IV. Conclusion

Reid's motion to dismiss Count Nine of the indictment against him [Docket No. 32] is ALLOWED because Reid's alleged actions are not within the scope of conduct prohibited by section 1993. While section 1993 does proscribe attempts, and the airplane that Reid allegedly attempted to destroy was engaged in "mass transportation," it is not a "vehicle" as that word is used by Congress.

It is important to note that the result the Court reaches here can have no effect at all on the sentence ultimately to be visited on Reid were he to be convicted.

Even had this Court denied the motion to dismiss Count Nine and—putting *Blockburger* to one side, *see supra* note 7—were Reid convicted on this count as well, under the United States Sentencing Guidelines he cannot be made to serve one more day in prison due to this violation. *See* U.S. Sentencing Guidelines Manual §§ 3D1.2, 3D1.3(a). Nor, however, ought the government here be considered to have "overcharged" to obtain some sort of litigation advantage, e.g., piling on redundant charges just to afford the jury separate opportunities to convict. To the contrary, section 1993 is new legislation, its contours not yet fully explored. Both the defense and the government are to be commended for ably briefing and presenting this issue. Its prompt resolution by the Court now will allow the government, should it wish, to appeal this Court's interpretation without disturbing the November 4, 2002 trial date.

SO ORDERED.