COMMONWEALTH *vs.* KERRY VANN BELL.

No. 05-P-1197.

Worcester. April 7, 2006. - September 5, 2006.

Present: PERRETTA, TRAINOR, & KATZMANN, JJ.

*Attempt. Rape. Solicitation to Commit Felony.*

This court concluded that a criminal defendant could be guilty of attempting to rape a child or of soliciting sexual conduct for a fee where, unbeknownst to him, he was negotiating with an undercover police officer to arrange for sexual intercourse with a child, and there was no actual child at risk in the negotiations, because the nonexistence of the child was a factual, not a legal, impossibility, and therefore was not a defense to the crime. [269-273]

A Superior Court judge properly denied the criminal defendant's motion to dismiss an indictment alleging an attempt to commit rape of a child, where there was sufficient evidence of an overt act to support the indictment. [273-276]

INDICTMENTS found and returned in the Superior Court Department on August 20, 2004.

A motion to dismiss was heard by *Francis R. Fecteau*, J., and questions of law were reported by him to the Appeals Court.

*Christopher P. LoConto* for the defendant.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. If sheer volume of literature be the measure of fascination, then few subjects have been as intriguing for criminal law scholars as the nexus between the doctrine of impossibility and the crime of attempt.[1] Perhaps this is so because that subject raises issues that are central to the fundamental question of what kinds of conduct warrant the application of the criminal sanction.[2] In this case we are asked to

[1] See 2 LaFave, Substantive Criminal Law § 11.5(a), at 230 (2d ed. 2003).
[2] See Packer, The Limits of the Criminal Sanction 3, 100-101 (1968).

consider the application of the concepts of impossibility and attempt to a technique that has become integral to law enforcement — the undercover "sting" operation.

A police undercover sting operation culminated in the indictment of defendant Kerry Vann Bell for attempted rape of a child and solicitation of sexual conduct for a fee, in violation of G. L. c. 274, § 6, and G. L. c. 272, § 53A, respectively. The defendant moved to dismiss the charges, claiming there was insufficient evidence presented to the grand jury. A Superior Court judge denied the defendant's motion and subsequently reported three questions to this court pursuant to Mass.R.Crim.P. 34, as amended, 442 Mass. 1501 (2004). See generally *Commonwealth* v. *Bankert, ante* 118, 120-121 (2006); Smith, Criminal Practice and Procedure §§ 2205, 2212-2214 (2d ed. 1983 & Supp. 2006). The questions reported are (1) "[w]hether the [Superior] Court[] [judge's] 'Memorandum of Decision and Order on Defendant's Motion to Dismiss' is correct as a matter of law"; (2) "[w]hether one [can] commit[] the crimes of attempted rape of a child and solicitation of sexual conduct for a fee when there is no actual intended victim, because unbeknownst to the perpetrator, he is negotiating with an undercover [police] officer to arrange for sexual intercourse with a child"; and (3) "[w]hether [the] indictment [in this case] which alleges an attempt to commit rape of a child is supported by sufficient evidence [as matter of law] of an 'overt act' committed in furtherance thereof [so as to survive a motion to dismiss]?" We answer "yes" to all three questions.[3]

*Background.* The evidence before the grand jury can be sum-

---

[3]Undercover sting operations are recognized legitimate investigative techniques, *Commonwealth* v. *Garcia*, 421 Mass. 686, 692 (1996), and they play an important role in the investigation and prosecution of alleged child sexual abusers. See, e.g., United States Department of Justice, Federal Bureau of Investigation, Investigating Crimes Against Children (2006); United States Department of Justice, Office for Victims of Crime and Office of Juvenile Justice and Delinquency Programs, Child Sexual Exploitation: Improving Investigations and Protecting Victims — A Blueprint for Action 17 (1995). Sexual exploitation of children is a matter of grave public concern. See, e.g., Cooper, Estes, Giardino, Kellogg, & Vieth, Medical, Legal and Social Science Aspects of Child Sexual Exploitation: A Comprehensive Review of Pornography, Prostitution and Internet Crimes (2005); United States Department of Justice, Office for Victims of Crime and Office of Juvenile Justice and Delinquency Programs, Child Sexual Exploitation: Improving Investiga-

marized as follows. On March 25, 2004, Officer Patricia Cummings was assigned to pose as a prostitute willing to sell the sexual favors of a five year old child. Using a false name, Cummings called the defendant's cellular telephone number, which was provided to her by a confidential informant, and asked for a man named "Ron." "Ron," who turned out to be the defendant, answered the telephone and acknowledged that a mutual friend (the confidential informant) had told him that Cummings was "cool." After both parties verified that they were not recording the call, Cummings asked to meet the defendant in person at a convenience store in Worcester, and the defendant agreed. The defendant, however, would not describe his appearance or the car he would be driving. He asked Cummings for her description and said that he would find her. The defendant also asked her to bring the child with her; otherwise, he said, they did not need to meet. Cummings, unable to bring the nonexistent child, told the defendant that the child would be close to the meeting point, and the defendant agreed to meet.

There was some initial difficulty at the meeting point, as the defendant went to the wrong location, but eventually he arrived, approached Cummings's car, and said, "I found you." The defendant answered to the name "Ron." Cummings exited her car and walked with the defendant to the store. After questioning each other on whether either was a police officer or was wearing a wire, the defendant began to complain that Cummings had not brought the child. Eventually, Cummings told the defendant that the child was "over by" a nearby park.

Cummings and the defendant then walked to a black sport utility vehicle (SUV) (which the defendant had driven to the site), where they discussed the transaction in detail. First, the defendant entered the vehicle and moved some items around

---

tions and Protecting Victims — A Blueprint for Action (1995). The clandestine world in which perpetrators operate present substantial challenges for detection and investigation. See *id.* at 4.

The questions posed for review by the judge here are thus "questions of importance to the general public" within the restrictive ambit of Mass.R. Crim.P. 34. *Commonwealth* v. *Bankert, supra* at 120, quoting from Smith, Criminal Practice and Procedure § 2213, at 388. We note that neither the defendant nor the Commonwealth has objected to the judge's utilization of the reporting mechanism.

inside to show that he was not a police officer. Then he told Cummings to get in. Inside the vehicle, the defendant told Cummings that he "doesn't . . . [often] do this and that he had a lot at stake, that he was a professional," and that "[o]ther people that do this don't have much at stake." Cummings replied that she did not want this "to get back" to her and that she did not want the child hurt. The defendant asked if the child was "stretched," to which Cummings replied that the child had been. The defendant also asked the child's age. When Cummings answered that she was almost five, the defendant said, "[t]hat is a good age because they're not in school yet where no one has to report anything." The defendant also said that he had "done boys before, but prefers girls," and that he had "done ages from three to five, six." Cummings responded to other questions from the defendant, explaining that the child was "withdrawn" and that she "doesn't say much, kind of does what you say." Cummings warned the defendant that she did not want the child hurt, and the defendant responded that he wanted intercourse and that he had done this before. The defendant asked Cummings about her "place that was nearby," and whether she felt better about the arrangement now, after her initial hesitation. He again asked where the child was. Cummings replied that the child was at "Elm Street by Elm Park." They then agreed that the defendant would follow Cummings to the location. When Cummings told the defendant she would not take anything less than $200, he looked at her and nodded "yes." Cummings then left the SUV, walked toward her car, and signaled other officers, who arrested the defendant. During booking, $211 were found in the defendant's possession.

*Discussion.* Because the first reported question can only be answered after we address the second and third questions, we consider the latter queries in sequence. We thus begin with the second question — whether a defendant can be guilty of attempting to rape a child or of soliciting sexual conduct for a fee where, unbeknownst to him, he was negotiating with an undercover police officer to arrange for sexual intercourse with a child, and there was no actual child at risk in the negotiations. The defendant argues that the statutory language of both of these crimes requires the presence of a victim as an element,

and since the child in this case did not really exist, the evidence before the grand jury was insufficient. The defendant points to language in G. L. c. 265, § 22(*b*), as appearing in St. 1980, c. 459, § 6, which states that "[w]hoever has sexual intercourse or unnatural sexual intercourse *with a person* and compels *such person* to submit by force and against *his* will, or compels *such person* to submit by threat of bodily injury" is guilty of rape (emphasis added).[4] Similarly, he emphasizes the language in G. L. c. 272, § 53A, inserted by St. 1983, c. 66, § 2, which penalizes a "person who engages, agrees to engage, or offers to engage in sexual conduct *with another person* in return for a fee, or . . . who pays, agrees to pay or offers to pay *another person* to engage in sexual conduct, or to agree to engage in sexual conduct *with another natural person*" (emphasis added).

The fundamental flaw in the defendant's argument is that it confuses legal and factual impossibility. See 2 LaFave, Substantive Criminal Law § 11.5(a), at 233-240 (2d ed. 2003). "Legal impossibility as a defense to an attempt offense arises only when the defendant's objective is to do something that is not a crime." *In re Doe*, 855 A.2d 1100, 1106 (D.C. 2004). See *United States* v. *Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976) ("Legal impossibility occurs when the actions which the defendant performs or sets in motion, even if fully carried out as he desires, would not constitute a crime"). "Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a [physical] circumstance unknown to the [defendant] prevents him from [accomplishing] that [intended] objective." *Ibid.* See *In re Doe, supra.* As famously exemplified, factual impossibility arises when the crime cannot physically be effectuated, such as trying to pick a pocket that proves to be empty. *Commonwealth* v. *McDonald*, 5 Cush. 365, 367-368 (1850).[5]

The defendant acknowledges that, in contrast to legal impos-

---

[4]While the defendant points to the general rape statute, he was actually charged with attempted rape of a child. The child rape statutes, G. L. c. 265, §§ 22A and 23, more specifically criminalize sexual intercourse or unnatural sexual intercourse with a child under sixteen. The greater specificity of those statutes is of no consequence to the defendant's argument or our resolution of the questions posed.

[5]In *Commonwealth* v. *McDonald, supra* at 367, the defendant contended

sibility, factual impossibility is not a defense to a crime. See *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22 (1897) (collecting cases); *Commonwealth* v. *Peaslee*, 177 Mass. 267, 272 (1901) (same). That factual impossibility is not a defense reflects a judgment that a defendant should not be exonerated simply because of "facts unknown to him which made it impossible for him to succeed." 2 LaFave, Substantive Criminal Law § 11.5(a), at 234. Thus, in an undercover sting operation culminating in a defendant's conviction, "[w]hether the targeted victim . . . [actually exists], the defendant's conduct, intent, culpability, and dangerousness are all exactly the same." *In re Doe, supra.* In such circumstance, the defendant is "deserving of conviction and is just as much in need of restraint and corrective treatment as the defendant who did not meet with the unanticipated events which barred successful completion of the crime." 2 LaFave, Substantive Criminal Law, *supra.*

The defendant's efforts to cast the alleged circumstances in terms of legal impossibility are unavailing. See *In re Doe, supra* (discussing and rejecting legal impossibility defense as applied to undercover sting operation targeting interstate travel with intent to engage in sexual acts with minor, where law enforcement agent posed as minor). Here, the evidence before the grand jury showed that the defendant arranged a meeting with a person who he thought would provide him access to a child for the purpose of sexual favors. He negotiated the price and the terms of the rendezvous. He was in his car about to travel to the agreed location to commit the rape when he was arrested. Had the police not arrested him, the defendant would have traveled to the nearby park only to discover that his expected, imminent victim was not present. That he was arrested as he was about to travel to the nearby park, rather than at the park itself, is of no

---

that "he could not be said to have attempted to steal the property of the unknown person, if there was no property to be stolen; and that therefore the indictment should have set out the property and shown the existence and nature of it by the proof." The court disagreed, answering that "a man may make an attempt, an experiment, to pick a pocket, by thrusting his hand into it, and not succeed, because there happens to be nothing in the pocket. Still, he has clearly made the attempt, and done the act towards the commission of the offense." *Id.* at 367-368.

material consequence.[6] In sum, the evidence as alleged showed that notwithstanding his claims of legal impossibility, the defendant did take actions towards the commission of the crime of rape of a child and did commit the crime of offering to engage in sexual conduct for a fee; therefore, the evidence as alleged satisfied the legal elements of the charged crimes. See, e.g., *Commonwealth* v. *Smith*, 431 Mass. 417, 420-421 (2000) (discussing rape of child); *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. 313, 317-318 (1997) (for crime of soliciting another person to engage in sexual conduct for fee, G. L. c. 272, § 53A, Commonwealth was required to prove existence of offer or agreement to engage in behavior for price, not exact nature of agreement).[7]

Because the defendant intended to commit illegal acts, took actions to carry out that intent, and was only precluded because the illegal acts could not physically be accomplished, there was factual impossibility. The nonexistence of the child in this case is no less an impediment to the application of the criminal sanction than was the absence of a wallet for a pickpocket, *Commonwealth* v. *McDonald*, 5 Cush. at 367-368; the absence of a fetus in an illegal abortion, *Commonwealth* v. *Taylor*, 132 Mass. 261, 262 (1882); or the failure of an attempted murderer to put enough poison in a victim's beverage, *Commonwealth* v. *Kennedy*, *supra* at 21-22. See *In re Doe*, 855 A.2d at 1106 (where defendant was convicted of interstate travel with intent to engage in sexual acts with minor, based on undercover sting operation where law enforcement officer posed as minor, court rejected defendant's characterization of "legal impossibility"

[6]Certainly, the involvement of an actual child should not be required to hold a defendant liable for attempted rape of a child. See generally *State* v. *Fowler*, 3 S.W.3d 910, 912-913 (Tenn. 1999).

[7]Indeed, regarding the sexual conduct for a fee offense, the defendant completed the crime when he made an agreement to pay a fee for sexual services. As G. L. c. 272, § 53A, makes plain, the crime includes the offer or agreement to engage as well as engaging in the sexual conduct. The defendant bargained and agreed with the undercover officer to pay for sexual conduct with a natural person. Simply because it turned out that the person about whom he agreed did not exist, the defendant cannot now suggest that he was not offering to pay for sexual acts with a natural person. We note, moreover, that while the offenses of solicitation and attempt to solicit differ, see *Commonwealth* v. *Foley*, 24 Mass. App. Ct. 114, 115-116 (1987), in any event, factual impossibility would not provide a defense to either offense.

and held that defendant's theory was "factual impossibility," which was not defense to charged crime). The defendant's actions would have resulted in the successful completion of the crime, but for factual circumstances not known to him. That the child did not exist does not diminish the evidence, as alleged, that he attempted to victimize a child he believed existed. The nonexistence of the victim was a factual, not a legal, impossibility. We answer the second question in the affirmative.

The third question reported was whether the indictment alleging an attempt to commit rape of a child in this case is supported, as matter of law, by sufficient evidence of an overt act to survive a motion to dismiss. Relying on *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982), the defendant argued that the evidence presented to the grand jury was insufficient to establish an overt act to support probable cause that he had attempted to rape a child.[8] The offense of criminal attempt, G. L. c. 274, § 6, requires proof of both "a specific intent to commit the substantive offense . . . and . . . an overt act towards its commission." *Commonwealth* v. *Foley*, 24 Mass. App. Ct. 114, 115 (1987). The overt act alleged "must approach the achievement of the

---

[8]Regarding *Commonwealth* v. *McCarthy*, *supra*, the Supreme Judicial Court has explained:

> "Although it is 'the well established principle that the adequacy of the evidence presented to the grand jury cannot be tested by a motion to dismiss,' *Commonwealth* v. *Robinson*, 373 Mass. 591, 592 (1977), in the *McCarthy* case we carved out a very limited departure from this principle where *no* evidence of criminality was presented to the grand jury. *McCarthy*, *supra* at 163. We ruled that the prosecutor must present sufficient evidence to establish the identity of the accused, and probable cause to arrest him or her. See *id*. However, the 'requirement of sufficient evidence to establish [these two facts] is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding.' *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 (1984)."

*Commonwealth* v. *Caracciola*, 409 Mass. 648, 650 (1991).

The third reported question presents a matter of great importance for pending, ongoing undercover sting operations involving child rape cases, as it concerns the probable cause which must be established as matter of law by such investigative operations. See note 3, *supra*. The broad importance of that question, and interests of judicial economy and efficiency in light of our affirmative answer to question two, all combine to present a rare confluence of circumstances for the exceptional interlocutory review provided under Mass. R.Crim.P. 34. See *Commonwealth* v. *Caracciola*, *supra*.

substantive crime attempted near enough to warrant criminal liability in view of such circumstances as the gravity of the crime, the uncertainty of the result, and the seriousness of any threatened danger." *Ibid.*, quoting from *Commonwealth* v. *Gosselin*, 365 Mass. 116, 121 (1974). While "preparation is not an attempt . . . [,] some preparations may amount to an attempt." *Commonwealth* v. *Peaslee*, 177 Mass. at 272.

The modern Massachusetts doctrine of attempt traces its roots back to the principles set forth by Chief Justice Holmes in *Commonwealth* v. *Kennedy*, 170 Mass. 18 (1887), and *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901). See *Commonwealth* v. *Hamel*, 52 Mass. App. Ct. 250, 257-258 (2001). "The law must be careful not to overplay the role of intention in such an inchoate crime as attempt, lest the result be . . . to punish the mere possession of a sinful mind. The consequence of Holmes's line of reasoning . . . was that [it is] in the duality of intention and overt act that . . . the heft of the crime of attempts [resides] . . . ." *Id.* at 257. A court's focus should thus be on "the distance or gap between the defendant's actions and the (unachieved) goal of the consummated crime." *Id.* at 258.[9] "If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor although there is still a *locus penitentiae* [opportunity to withdraw] in the need of a further exertion of the will to complete the crime. . . . [T]he degree of proximity held sufficient may vary with circumstances, including among other things the apprehension which the particular crime is calculated to excite." *Commonwealth* v. *Ortiz*, 408 Mass. 463, 471-472 (1990), quoting from *Commonwealth* v. *Peaslee*, 177 Mass. at 272.

---

[9]The doctrine of attempt in this Commonwealth is to be distinguished from the position adopted by the Model Penal Code. See *Commonwealth* v. *Hamel*, *supra* at 258-259. The Code focuses on what the offender has done, not what he has left to do. It looks to whether the defendant took "a 'substantial step in a course of conduct planned to culminate in [the] commission of the crime,' which step was 'strongly corroborative of the actor's criminal purpose.' " *Id.* at 258, quoting from Model Penal Code and Commentaries § 5.01(1)(c) & (2), at 296 (1985). Legislation reflecting this approach, which broadens the base of criminal attempt and would make criminal convictions easier to secure, was proposed but not enacted. See *Commonwealth* v. *Hamel*, *supra* at 259. See also *Commonwealth* v. *Ortiz*, 408 Mass. 463, 472 (1990).

Here, we have just such a combination of factors. The record before the grand jury showed that the defendant received a telephone call from a woman who he thought was offering a child to him in an exchange of sexual services for money. He agreed to meet that woman for the express purpose of effectuating that exchange. The defendant met the woman; expressed disappointment that she had not brought the child with her as he thought she had agreed to do; discussed with her the temperament and physical condition of the child, the location of the child, and the woman's experience in this type of activity; and agreed to the amount of the charge (not less than $200). When the police arrested him, the defendant was about to follow the woman to the child for the purpose of having intercourse with the child in a nearby location. The defendant had just over $200 in his possession when he was arrested. These alleged actions and the evidence, in context and taken together, show both a detailed plan and an agreement to commit the rape. All that was left to do was to drive to a nearby location and get the child. A present intention to perform the crime coupled with a well thought out plan and a commitment to complete it weighs heavily towards the certainty that the commission of the crime was imminent. In addition, "the gravity of the crime . . . and the seriousness of any threatened danger" cannot be gainsaid. *Commonwealth* v. *Foley*, 24 Mass. App. Ct. at 115. In sum, considering the relatively small gap between the defendant's completed actions and consummation of the contemplated rape, the defendant's commitment to a detailed plan, and the gravity of the offense, we conclude that there was sufficient evidence of an overt act to survive a motion to dismiss the indictment.

The defendant cites *Commonwealth* v. *Ortiz, supra,* to support his contention that because he might have had a change of heart while traveling to the meeting, the evidence of his conduct was too remote to constitute an overt act. Each case, however, must be decided on its own facts. Here, there was substantial evidence alleged before the grand jury that the defendant had a specific plan to which he was apparently committed and was in the process of carrying out when he was arrested. See *Commonwealth* v. *Peaslee,* 177 Mass. at 273-274 (defendant "must be shown to have the present intent to accomplish the crime

without much delay, and to have had this intent at a time and place where he was able to carry it out").

All in all, given the nature of the crime alleged, the thoroughness of the defendant's planning and his conduct as alleged, and the little that remained for him to do to complete the crime, we conclude that the gap here between what was done and what remained to be done was small enough to warrant probable cause for a charge of attempt. Accordingly, we answer the third reported question in the affirmative. Based upon our affirmative answers to the second and third reported questions, we also answer the first reported question — whether the judge's order was correct as a matter of law — in the affirmative.

In short, for the foregoing reasons, we answer "yes" to all three reported questions, and remand the case to the Superior Court for further proceedings consistent with these responses to the reported questions.

*So ordered.*