NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-268                                              Appeals Court

COMMONWEALTH  vs.  BRENDAN J. GARAFALO
(and nine companion cases[1]).

Nos. 23-P-268, 23-P-269, 23-P-270, 23-P-271, & 23-P-272.

Plymouth.     November 9, 2023. - May 7, 2024.

Present:  Ditkoff, Englander, & Walsh, JJ.


Trafficking.  Prostitution.  Attempt.  Statute, Construction.
    Practice, Criminal, Dismissal.



Indictments found and returned in the Superior Court
Department on October 15, 2021.

Motions to dismiss were heard by Maynard M. Kirpalani, J.


Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
    Patrick J. Noonan for the defendants (Richard J. Sweeney,
for James Bi, & Joshua D. Werner, for Viet H. Nguyen, also
present).

---

[1] One against Brendan J. Garafalo and two each against Brian
D. Dick, Eric P. VanRiper, James Bi, and Viet H. Nguyen.  During
the course of this appeal, we received a suggestion of death of
the defendant Brian D. Dick and a request that the charges
against him be dismissed.  That issue should be taken up in the
Superior Court.

ENGLANDER, J.  Massachusetts G. L. c. 265, § 50, the so-called "human trafficking" statute, enacted in 2011, makes it a crime for a person to (among other things) "attempt[] to recruit, entice . . . or obtain by any means, another person to engage in commercial sexual activity."  In this case, five separate defendants have been charged with violating the statute, after they responded to advertisements posted by the State police and were arrested as part of a "sting" operation. A Superior Court judge dismissed the ensuing indictments, ruling that because the advertisements were fake and there was no actual "victim" in these instances, the "another person" requirement of the statute could not be met.

The case requires us to address the criminal law relative to attempt crimes, and whether so-called "factual impossibility" is a defense to the charge at issue (because there was no actual person who would have provided any sexual services).  More generally, the case also requires us to consider whether and under what circumstances the human trafficking statute can apply to persons sometimes referred to as "Johns" -- that is, persons who seek the services of prostitutes but who do not otherwise cause or profit financially from the prostitution.

As to the former issue, we conclude that the Commonwealth may meet the "another person" element of the crime in the context of a law enforcement sting operation, and that the

dismissal on that ground was incorrect.  We nevertheless affirm the dismissal of the indictments, because the evidence before the grand jury did not establish probable cause that any of the defendants met the statutory requirement that they "recruit, entice . . . or obtain by any means" another person, so as to be guilty of "trafficking" that person.  While the statute's language is indeed broad, we do not construe it to extend to conduct that merely responds to an offer from another person, but that does not otherwise cause or control the offering of commercial sex.  As presented to the grand jury, each of the defendants responded to an advertisement offering sexual services, but not more, and thus the statutory language is not met.

Background.  In August of 2021, a division of the State police posted two advertisements on the Internet.  Each advertisement contained photographs and a description of a woman who purportedly was offering sexual services for a fee, and included a telephone number and the words "text me."  On August 5, each of the five defendants separately contacted the telephone number in the advertisements.  The communications thereafter differ somewhat from defendant to defendant, but eventually each defendant was provided the address of a hotel, where that defendant could come to meet the purported offeror of

services. Upon arrival at the designated hotel room, each defendant was arrested by State troopers.

A grand jury indicted each defendant on two charges -- G. L. c. 265, § 50, "human trafficking," and G. L. c. 272, § 53A, "engaging in sexual conduct for a fee." General Laws c. 265, § 50 (a), provides, in pertinent part:

> "Whoever knowingly: (i) . . . attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person to engage in commercial sexual activity . . . shall be guilty of the crime of trafficking of persons for sexual servitude" (emphasis added).

As to penalty, the statute provides for a five-year mandatory minimum sentence. See G. L. c. 265, § 50 (a).

General Laws c. 272, § 53A (b), provides, in pertinent part:

> "Whoever pays, agrees to pay or offers to pay another person to engage in sexual conduct . . . shall be punished by imprisonment in the house of correction for not more than 2 and one-half years . . . whether such sexual conduct occurs or not" (emphasis added).

Notably, § 53A does not carry a mandatory minimum sentence.

The defendants each filed a motion to dismiss the charges as to G. L. c. 265, § 50, the human trafficking statute. They argued (among other things) that the facts presented to the grand jury were inadequate to establish probable cause because (1) there was no victim in these cases, and the statute requires

that there be a victim for the crime to be completed (relying
principally on language from Commonwealth v. Fan, 490 Mass. 433
[2022]), and (2) the facts as to each defendant were otherwise
insufficient to satisfy the statute, because the statutory
language was not intended to encompass persons who merely
responded to an advertisement and at most, offered to pay for
sex.  As to this latter argument, some defendants pointed out
that the conduct alleged would violate the preexisting statute,
G. L. c. 272, § 53A, and the fact that the acts were already
criminal provided another reason not to read the recently
enacted G. L. c. 265, § 50, as broadly as the Commonwealth
contends.

After a hearing, the judge dismissed the human trafficking
charges, accepting the argument that where there was no actual
victim of the alleged crime, the "another person" requirement
was not met.  As a result, the judge did not address whether the
defendants' conduct met the "recruit, entice . . . or obtain by
any means" language.  The Commonwealth appeals.[2]

Discussion.  1.  The "another person" requirement.  We
first address whether, under the circumstances, the Commonwealth
could meet the statutory element that each defendant attempted

---

[2] See Mass. R. Crim. P. 15 (a), as amended, 476 Mass. 1501
(2017) (Commonwealth's right to interlocutory appeal of decision
granting motion to dismiss complaint or indictment).  The
separate appeals were consolidated in this court.

to obtain "another person" for commercial sexual activity. The motion judge concluded that the Commonwealth could not, because "[t]he grand jury heard no evidence that there were any actual victims" in the defendants' cases. If that conclusion were correct, the human trafficking statute (and perhaps any other statute using such "another person" language) could not be invoked to prosecute attempt crimes against persons arrested as a result of a sting operation such as the one at issue.

The law of criminal attempt, however, is not so limited. Rather, it is well established that an attempt crime occurs when the defendant forms the intent to commit the criminal act and then overtly acts upon that intent, Commonwealth v. Ortiz, 408 Mass. 463, 470 (1990), even if the crime could not be completed for reasons unknown to the defendant.[3] This court explained the principle in Commonwealth v. Bell, 67 Mass. App. Ct. 266 (2006), a case involving a different statute but analogous facts. In Bell the defendant responded to a police sting operation, seeking to commit sexual acts against a young child. After his arrest, the defendant argued that he could not have committed attempted rape of a child, because the crime "requires the

---

[3] In addition, the overt act must be sufficiently proximate to the carrying out of the crime. See Commonwealth v. Bell, 455 Mass. 408, 414 (2009).

presence of a victim as an element, and . . . the child in this case did not really exist."  Id. at 269-270.

This court rejected the defendant's argument in Bell, noting that "factual impossibility is not a defense to a crime." 67 Mass. App. Ct. at 271.  We explained that "factual impossibility arises when the crime cannot physically be effectuated, such as trying to pick a pocket that proves to be empty."  Id. at 270.  We expounded on the rationale as follows:

> "That factual impossibility is not a defense reflects
> a judgment that a defendant should not be exonerated
> simply because of 'facts unknown to him which made it
> impossible for him to succeed.'  Thus, in an
> undercover sting operation culminating in a
> defendant's conviction, '[w]hether the targeted victim
> . . . [actually exists], the defendant's conduct,
> intent, culpability, and dangerousness are all exactly
> the same.'  In such circumstance, the defendant is
> 'deserving of conviction and is just as much in need
> of restraint and corrective treatment as the defendant
> who did not meet with the unanticipated events which
> barred successful completion of the crime.'"
> (Citations omitted.)[4]

Id. at 271.

---

[4] The authorities often distinguish "factual impossibility" from "legal impossibility," but we need not dissect the distinction in this case.  Factual impossibility is where the defendant intended to perform all the elements of a crime, but could not due to facts unknown.  Legal impossibility is where the acts the defendant intends simply do not constitute a crime. See Bell, 67 Mass. App. Ct. at 270.  See also 2 W.R. LaFave, Substantive Criminal Law § 11.5(a) (2023).  Here, the evidence before the grand jury was that the defendant intended to commit an act with "another person."

The reasoning of our opinion in Bell controls here.[5]  The facts before the grand jury established probable cause that each of the defendants intended to pay another person for sexual acts.  The defendants did not know that the person described in the advertisement was fictitious; indeed, each defendant actually communicated with a person, and then arrived at the identified place and entered it.  As stated in Bell, each defendant's "conduct, intent, culpability and dangerousness" were as if the other "person" -- a victim -- actually existed (citation omitted).  67 Mass. App. Ct. at 271.

The defendants argue, however, that criminal liability is foreclosed by the Supreme Judicial Court's construction of the human trafficking statute in Fan, 490 Mass. at 445-452.  We do not agree.  The facts in Fan involved a defendant who ran multiple brothels.  The evidence presented came from several customers of the brothels, as well as two of the women who provided services, but the evidence did not link particular customers to particular victims.  The defendant argued that to

---

[5] Our decision in Bell addressed questions reported by the trial judge.  Thereafter the defendant in Bell was tried and convicted in the Superior Court, and on appeal from the convictions the Supreme Judicial Court again addressed an issue regarding the scope of attempt crimes.  See Commonwealth v. Bell, 455 Mass. at 412-417.  The issue presented to the Supreme Judicial Court was different from that before us in Bell, 67 Mass. App. Ct at 270-271, and nothing in the Supreme Judicial Court's Bell opinion detracts from the reasoning in our earlier decision.

prove a violation of the statute, the Commonwealth needed to charge and prove (and the jury needed to find) a "specific victim" that the defendant had trafficked "at the specific location" charged. Id. at 445. The court rejected that argument, holding that under the statute the Commonwealth did not need to prove the victim's identity. It concluded its analysis by stating:

> "Although the Commonwealth must prove beyond a reasonable doubt that there was a victim, i.e., someone whom the defendant enabled or caused to engage in commercial sexual activity, it need not prove the identity of that person as an element of the offense."

Id. at 448.

The defendants seize on the language that "the Commonwealth must prove that there was a victim," but in doing so they remove the statement from its context. The Fan court was not addressing an attempt crime, or issues raised by a law enforcement sting operation. Rather, the court was merely saying that the human trafficking crime must involve trafficking of someone other than the defendant who is charged -- i.e., "another person." Put differently, a person could not be guilty of "trafficking" herself. Fan, 490 Mass. at 447. As noted above, that element is met here, because the defendants attempted to engage in commercial sexual activity with another person -- the purported prostitute (actually, a police officer)

with whom the defendants communicated.  Nothing in Fan holds that an attempt crime cannot be proved in the circumstances here.[6]

2.  "Recruit, entice . . . or obtain by any means."  That brings us to the defendants' separate argument for dismissal -- in essence, that the human trafficking statute does not apply where a defendant responded to an advertisement offering sex for a fee, but did not initiate or impel the offer of sex or stand to profit from it.[7]  They argue "that the law was intended to punish 'pimps' or those persons who traffic human beings for financial gain. . . .  The [L]egislature did not intend to punish 'Johns' who offer another person a fee in exchange for sexual conduct."  And, the defendants point out, G. L. c. 272, § 53A, which predates G. L. c. 265, § 50, does explicitly criminalize the simple offer of payment to engage in sexual conduct, "whether such sexual conduct occurs or not."  The defendants contend that the existence of G. L. c. 272, § 53A is evidence that G. L. c. 265, § 50 was not intended to encompass the conduct at issue.  Moreover, they argue, the human

---

[6] We note that if the defendants were correct, then their reasoning would also appear to foreclose the criminal charges in this case under G. L. c. 272, § 53A, as that statute also requires an offer to pay "another person."

[7] We consider this argument because, if correct, it would result in affirmance of the order below.  See Lopes v. Commonwealth, 442 Mass. 170, 181 (2004).

trafficking statute's five-year mandatory minimum sentence further suggests that the human trafficking crime was intended to be different in kind than the conduct prohibited by G. L. c. 272, § 53A.

Some of the defendants' arguments have considerable force and, as discussed herein, we ultimately agree that the facts presented to the grand jury were not sufficient to establish a human trafficking charge.  But the question before us is one of statutory interpretation, and as always when confronting such a question, we must start with the language of the statute.  See Worcester v. College Hill Props., LLC, 465 Mass. 134, 138-139 (2013) ("In interpreting the meaning of a statute, we look first to the plain statutory language").  That language is broader than the defendants contend.  Notably, the Supreme Judicial Court has rejected previous efforts by defendants to limit the scope of the human trafficking statute (in ways other than the defendants argue here), relying primarily upon the breadth of the language the Legislature employed.  See Commonwealth v. Dabney, 478 Mass. 839, 852-856, cert. denied, 139 S. Ct. 127 (2018); Commonwealth v. McGhee, 472 Mass. 405, 418-420 (2015). Here, the Commonwealth once again relies on the statute's plain language -- in particular, it argues that the defendants' alleged conduct falls within the words "entice," "recruit," or "obtain."

The Supreme Judicial Court has previously addressed the meaning of the words "entice" and "recruit," as used in the human trafficking statute, in Dabney, 478 Mass. at 852-856. In Dabney, a defendant convicted of human trafficking challenged the sufficiency of the evidence against him, arguing that he had merely encouraged the victim, a former prostitute, to begin prostituting again, but had not coerced her nor derived a financial benefit. See id. at 852. The Dabney court rejected those arguments. The court held that coercion or force, which is a required element of the Federal human trafficking crime, 18 U.S.C. § 1591, is not found in the language of G. L. c. 265, § 50, and is not an element of the Massachusetts crime. Id. at 855-856. Nor does the Massachusetts statute require that the defendant receive a financial benefit, as with a pimp: "an individual who knowingly enables or causes another person to engage in commercial sexual activity need not benefit, either financially or by receiving something of value" (citation omitted). Id. at 855.

The facts of Dabney, however, were materially different than the facts here. Although those facts did not necessarily include coercion, they did involve, unlike here, substantial efforts by the defendant to convince the victim to engage in prostitution. In Dabney, "[t]he jury could have found that the defendant 'enticed' and 'recruited' the victim to engage in

prostitution because he told her that she was beautiful and would make 'good money' from prostitution, controlled the terms of her client visits, encouraged her to advertise on Backpage, and helped her pay for and set up the Backpage account." Dabney, 478 Mass. at 854.

The Dabney court addressed the meaning of "entice" and "recruit" in the context of the above facts. The court noted that the dictionary definition of "entice" is to "incite," "instigate," "draw on by arousing hope or desire," "allure," "attract," "draw into evil ways," "lead astray," or "tempt." Dabney, 478 Mass. at 855, quoting Webster's Third New International Dictionary 757 (1993). The court concluded that "[o]ne may entice, for example, simply by making an attractive offer." Dabney, supra at 856. Similarly, the court listed the definitions of "recruit" as to "hire or otherwise obtain to perform services," to "secure the services of" another, to "muster," "raise," or "enlist." Id. at 856, quoting Webster's, supra at 1899. In Dabney, the court concluded that the definitions of "entice" and "recruit" were met by the facts in that case, and affirmed the convictions of human trafficking. Id.

The Commonwealth argues that the facts presented to the grand jury in this case are similarly sufficient to meet the statutory language -- including not only "entice" and "recruit"

but also "obtain" -- but we are not persuaded.  In our view, both "entice" and "recruit," as used in the statute, contain an element of causing another person to engage in an act or practice in which the person was not otherwise intending to engage.  Many, if not all, of the definitions cited in Dabney contain this aspect.  It is present, for example, in the words "tempt," and "incite," and perhaps most usefully, in "attract." Dabney, 478 Mass. at 855-856.  Notably, the Dabney court's example of a broad reading of entice uses the word "attract" -- "to make an attractive offer" (emphasis added).  Id.  And to attract means that the allegedly attracting party (the defendant) must at least have initiated the behavior of the party attracted (the victim).  Indeed, the element of causing someone to do something that they otherwise were not intending is present in the Dabney court's description of the defendant's conduct in that case -- the defendant "controlled," "encouraged," and "helped" the victim.  Id. at 854.  Nor do we think the word "recruit" is broader than "entice."  "Recruit," in the context of human trafficking, similarly means that the defendant must initiate the concept that the victim will engage in commercial sexual activity.[8]  See Heritage Jeep-Eagle, Inc. v.

---

[8] For example, an employer has not "recruit[ed]" a job applicant that simply approached the employer and asked for a job.

<u>Chrysler Corp</u>., 39 Mass. App. Ct. 254, 258 (1995) ("While courts should look to dictionary definitions and accepted meanings in other legal contexts . . . their interpretations must remain faithful to the purpose and construction of the statute as a whole").

The facts of this case do not fall within the above construction.  The defendants here responded to advertisements posted by someone else -- they did not initiate the offer of commercial sex nor, on these facts, did they take actions to cause another person to do something that person did not otherwise intend to do.  The defendants did not "incite," or "tempt," nor did they "attract."  Rather, the person they were communicating with had initiated the offer, and no tempting was required or occurred.[9]

The next question is whether the statute's last phrase of the list -- "obtain by any means" -- has even greater breadth than "recruit" or "entice," such that it can encompass the conduct of the defendants here.  We conclude that it does not.  The dictionary definition of "obtain" is perhaps broader than "entice" or "recruit" -- it is "to gain or attain . . .

---

[9] As is evident from the above discussion, a person who pays another for sex thus could violate the human trafficking statute, if their conduct also amounted to enticing or recruiting a person to engage in commercial sexual activity where the person did not previously so intend.

usu[ally] by some planned action or method."  Webster's Third New International Dictionary 1559 (2002).  Arguably, this definition -- to "attain" -- could encompass actions of defendants who merely respond to an advertisement and complete (or attempt to complete) the sexual transaction first proposed by the offeror.

In the context of the human trafficking statute, however, we decline to read "obtain" so broadly, for several reasons. First, the word itself has a narrower but commonly used meaning, which is not simply to get or attain, but to possess or control. Obtain derives from the Latin "tenere" -- to hold.  One "obtains" property, for example, which means they hold or possess it.  Similarly, here the statute requires the defendant to "obtain" a "person."  Context matters, and the use of "obtain" in the statute is in the context of "trafficking," which implies some level of controlling or changing the victim's will or intent.[10]

So construed, the defendants' conduct here did not attempt to obtain a person, because the defendants did not attempt to possess or control someone.  They responded to an offer in

---

[10] We are here construing only the word "obtain."  The words "entice" or "recruit" do not require that the defendant control the victim, and in construing "obtain" we are not reimporting a general element of coercion into the statute.  Nor does the level of control for "obtain[ing]" necessarily have to rise to the level of coercion.

accordance with its terms (so far as appears from the facts before the grand jury). We are bolstered in this view by at least two useful aids to construction of statutes. The first is the doctrine of ejusdem generis, which states that where, as here, "general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Banushi v. Dorfman, 438 Mass. 242, 244 (2002), quoting 2A N.J. Singer, Sutherland Statutory Construction § 47.17, at 273-274 (6th ed. rev. 2000). See Powers v. Freetown-Lakeville Regional Sch. Dist. Comm., 392 Mass. 656, 660 n.8 (1984). Here, the words that precede "obtain" in the list contain an element either of causing the other "person" to do something they otherwise did not intend (recruit or entice), or of somehow physically affecting the other person's actions (transport, harbor, provide). The Commonwealth would have us construe "obtain" not to be limited in either of these ways, but the doctrine of ejusdem generis suggests otherwise, and thus supports the construction of "obtain" that we adopt here.

The second helpful aid is an important piece of legislative history. As the defendants point out, the "payment for sex" statute, G. L. c. 272, § 53A, predates the human trafficking statute, and expressly criminalizes the act of offering to pay

for sex.  Of course, the fact that another criminal statute already applies to the conduct at issue does not, standing alone, mean that we should construe such conduct to be excepted from the human trafficking statute.  The Legislature can (and often does) criminalize the same conduct under two different statutes.  See Dabney, 478 Mass. at 855-856; Commonwealth v. Hudson, 404 Mass. 282, 285-286 (1989).  Here, however, the Legislature considered and amended § 53A at the same time that it enacted the human trafficking statute.

We find the Legislature's amendment to G. L. c. 272, § 53A, to be material to our analysis here.[11]  The human trafficking

---

[11] The parties have each cited other purported "legislative history" to us, but we do not find the other history helpful to our analysis.  The defendants, for example, cite a statement made by a single legislator during discussion of the house bill precursor to G. L. c. 265, § 50:  "It's not the old fashioned model of trafficking. . . .  We will look at perpetrators as persons who are trafficking other human beings for financial gain" (emphasis added).  State House News Service (House Sess.), Nov. 15, 2011.  As noted above, the Supreme Judicial Court has expressly rejected the notion that the statute criminalizes only actions of defendants that are directed at financial gain.  See McGhee, 472 Mass. at 418-420.  But in any event the cited statement carries little or no weight as "legislative history": "[e]vidence as to statements attributed to individual legislators as to their motives or mixtures of motives in considering legislation are not an appropriate source from which to discover the intent of the legislation."  Administrative Justice of the Hous. Court Dep't v. Commissioner of Admin., 391 Mass. 198, 205 (1984).

The Commonwealth's purported history is equally unhelpful. The Commonwealth cites a quote from Dabney, 478 Mass. at 853, to the effect that the Legislature intended to "change the focus . . . from targeting prostitutes to going after the men who pay

statute was first enacted on November 21, 2011, as the twenty-third section of a comprehensive bill that addressed several aspects of sex crimes in the Commonwealth.  See 2011 Mass. H.B. 3808, § 23.  At the same time, in the twenty-fifth section of the bill, the Legislature amended G. L. c. 272, § 53A, by (1) separating out the crime of offering to pay for sex, and (2) increasing the maximum possible punishment for that crime to two and one-half years in the house of correction.  See 2011 Mass. H.B. 3808, § 25.  Notably, however, the Legislature did <u>not</u> establish a mandatory minimum sentence for the crime of offering to pay for sex.

This legislative history is consistent with our conclusion, as it indicates that the same Legislature that enacted a five-year mandatory minimum sentence for human trafficking decided to treat the crime of agreeing to pay for sex differently, with a lesser, but increased, penalty.  To be clear, we do not construe this history as creating a carve out, such that the human trafficking statute does not apply to any actions that fall

---

<u>for sex with them</u>" (emphasis added), suggesting that Johns are indeed covered by the statute.  The quote, however, could be understood to refer to the amendments in the legislation that increased the punishment for the persons paying for sex, which previously were the same as those for sex workers.  Moreover, the quote is not from the legislative history of § 50, but rather from personal comments made by then State Attorney General, Martha Coakley, following then Governor Deval Patrick's signing the bill into law.  Gov. Patrick Signs Bill Against Human Trafficking, Associated Press, Nov. 21, 2011.

within G. L. c. 272, § 53A.  The language of the human trafficking statute that we have already discussed -- words like "entice," "recruit" and "obtain" -- plainly can encompass some conduct also covered by § 53A.[12]  Where we find the history helpful, however, is in suggesting that § 53A sufficiently differs from G. L. c. 265, § 50 that some conduct covered by § 53A is not covered by § 50, and thus not subject to a five-year mandatory minimum sentence.  The conduct alleged by the Commonwealth here falls into that category.  As the evidence presented to the grand jury did not as a matter of law constitute "entic[ing]," "recruit[ing]," or "obtain[ing]" "another person" so as to constitute trafficking of a person for sexual servitude, the orders dismissing the human trafficking indictments against each defendant are affirmed.

So ordered.

---

[12] The words "by any means" do not add materially to our analysis of the meaning of "entice," "recruit," or "obtain." "By any means" evidences the Legislature's intent that the statute have a broad scope.  But the phrase "by any means" does not change the meaning of the words that it accompanies.