SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. BRENDAN J. GARAFALO (and nine companion cases[1])

 
 Docket:
 SJC-13652
 
 
 Dates:
 January 6, 2025 - May 2, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Trafficking. Prostitution. Attempt. Statute, Construction. Probable Cause. Practice, Criminal, Dismissal. Words, "Obtain by any means," "Entice," "Recruit."
 
 

       Indictments found and returned in the
Superior Court Department on October 15, 2021.
      Motions to dismiss were heard by Maynard
M. Kirpalani, J.
      After review by the Appeals Court, 104
Mass. App. Ct. 161 (2024), the Supreme Judicial Court granted leave to obtain
further appellate review.
      Julianne Campbell, Assistant District
Attorney, for the Commonwealth.
      Patrick J. Noonan (Richard J. Sweeney,
Sabrina Bonanno, & Joshua D. Werner also present) for the defendants.
      Andrea Joy Campbell, Attorney General,
& Nicole Nixon, Assistant Attorney General, for the Attorney General.
      WENDLANDT, J.  This case presents the question whether an
individual who responds to an advertisement for commercial sexual services ostensibly
from an adult sex worker purporting to be acting independently, selects from
among the types of sexual services offered by the sex worker, agrees to pay the
price set by the sex worker for the selected services, and goes to a location
determined by the sex worker has engaged in "the crime of trafficking of
persons for sexual servitude" in violation of G. L. c. 265,
§ 50 (sex trafficking statute or statute). 
We conclude that such an individual has not.  On that basis, we affirm the decision of the
Superior Court judge dismissing the indictments charging violation of the sex
trafficking statute by the five defendants in these consolidated cases, each of
whom was indicted on proof before a grand jury that they essentially engaged in
the acts described supra.[2]
      1. 
Background.  a.  Facts.[3] 
In August 2021, each defendant responded to an online advertisement
ostensibly offering sexual services for a fee.[4]  The advertisement contained photographs of an
adult woman, a list of sexual services offered, and contact information for the
woman.  The advertisement stated that the
woman depicted was "independent," meaning -- as clarified in one text
message exchange between the ostensible sex worker and one of the defendants --
that the woman was not affiliated with a "pimp" or
"boyfriend."  The advertisement
also contained a "legal disclaimer," which reserved the woman's
"right not to enter into any arrangement . . . for
any . . . reason at [her] sole discretion."
      Using the contact information in the
advertisement, each defendant called or sent a text message to the woman.  In the telephone calls and text message
exchanges that followed, each defendant selected sexual services from a list of
services offered in the advertisement and agreed to pay the fee set by the
woman.  Each defendant was given a
specific time and location for the prearranged encounter.  Upon arriving at the appointed time and
place, each defendant received a text message identifying a particular hotel
room where the sexual services were to be performed.
      Unbeknownst to the defendants, however,
the advertisement had been posted by State police troopers and local police
officers as part of a sting operation. 
The ostensible sex worker in each case was an undercover police officer.  Approaching the specified room, each
defendant was met by police officers and arrested.
      b. 
Prior proceedings.  In October
2021, a Plymouth County grand jury returned indictments charging each defendant
with trafficking of persons for sexual servitude, under the sex trafficking
statute; and engaging in sexual conduct for a fee, in violation of G. L.
c. 272, § 53A (sex for a fee statute).  The defendants filed motions to dismiss the
sex trafficking indictments pursuant to Commonwealth v. McCarthy, 385 Mass. 160
(1982),[5] alleging that the facts presented to the grand jury did not
establish probable cause to support the sex trafficking charges.
      A Superior Court judge allowed the motions
on the basis that the defendants did not attempt to traffic "another
person" because the purported sex worker, unbeknownst to the defendants,
was a police officer working undercover as part of a sting operation.  The Commonwealth appealed.
      Although disagreeing with the Superior
Court judge's reasoning, the Appeals Court affirmed the dismissal of the
defendants' indictments, concluding that "the evidence presented to the
grand jury did not as a matter of law . . . constitute trafficking of
a person for sexual servitude." 
Commonwealth v. Garafalo, 104 Mass. App. Ct. 161, 172 (2024).  The Commonwealth filed a timely petition for
further appellate review, which we allowed.
      2. 
Discussion.  a.  Standards of review.  We review de novo "a judge's decision to
dismiss for lack of sufficient evidence [to support an indictment]" and
"do not defer to the judge's factual findings or legal
conclusions."  Commonwealth v.
Clinton, 491 Mass. 756, 765 (2023), quoting Commonwealth v. Stirlacci, 483
Mass. 775, 780-781 (2020).  We consider
only whether the "grand jury have heard sufficient evidence, when viewed
in the light most favorable to the Commonwealth, to warrant a person of
reasonable caution in believing that the identified defendant has committed
each of the elements of the charged offense."  Clinton, supra, quoting Stirlacci, supra at
780.  "The 'probable cause' standard
is a 'considerably less exacting standard' than proof beyond a reasonable
doubt, which is required to support a conviction at trial" (quotation
omitted).  Clinton, supra, quoting
Stirlacci, supra.
      We likewise review questions of statutory
construction de novo.  Conservation
Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  "Our primary goal in interpreting a
statute is to effectuate the intent of the Legislature."  Id., quoting Casseus v. Eastern Bus Co., 478
Mass. 786, 795 (2018).  In doing so, we
abide by "[t]he general and familiar rule," which 
"is that a
statute must be interpreted according to the intent of the Legislature
ascertained from all its words construed by the ordinary and approved usage of
the language, considered in connection with the cause of its enactment, the
mischief or imperfection to be remedied and the main object to be accomplished,
to the end that the purpose of its framers may be effectuated."
Pesa, supra,
quoting Commissioner of Revenue v. Dupee, 423 Mass. 617, 620 (1996).  "[O]ur analysis begins with the
principal source of insight into legislative intent -- the plain language of
the statute" (quotations omitted). 
Commonwealth v. Rainey, 491 Mass. 632, 641 (2023), quoting Patel v.
7-Eleven, Inc., 489 Mass. 356, 362 (2022), S.C., 494 Mass. 562 (2024).  And in the absence of statutory definitions,
we may "derive the words' usual and accepted meanings from sources
presumably known to the statute's enactors, such as their use in other legal
contexts and dictionary definitions." 
Curtatone v. Barstool Sports, Inc., 487 Mass. 655, 658 (2021), quoting
Commonwealth v. Matta, 483 Mass. 357, 372 (2019).  "We do not construe terms in isolation;
instead, we consider the specific language of a provision in the context of the
statute as a whole."  Garcia v.
Steele, 492 Mass. 322, 326 (2023).
      b. 
Factual impossibility.  Because
the defendants continue to press the argument on appeal, we pause briefly to
address the question whether, in view of the fact that the supposed sex worker
was actually an undercover police officer and although the defendants did not
know that fact at the time, it was impossible for them to have attempted to
traffic "another person" as required by the statute.  As relevant here, the statute provides that
"[w]hoever
knowingly . . . attempts to recruit, entice, harbor, transport,
provide or obtain by any means, another person to engage in commercial sexual
activity . . . shall be guilty of the crime of trafficking of
persons for sexual servitude" (emphases added).
G. L.
c. 265, § 50 (a).
      It is a basic proposition of our criminal
laws that factual impossibility[6] is not a defense to a charge of
attempt.  See Commonwealth v. Peaslee,
177 Mass. 267, 272-274 (1901) (collecting cases involving convictions of
attempted crimes); 2 W.R. LaFave, Substantive Criminal Law
§ 11.5(a)(2) (3d ed. 2024) ("All courts are in agreement that what is
usually referred to as 'factual impossibility' is no defense to a charge of
attempt").  See also Commonwealth v.
Disler, 451 Mass. 216, 223 (2008), quoting Commonwealth v. Bell, 67 Mass. App.
Ct. 266, 271 (2006) (where defendant was convicted of violating child
enticement statute, G. L. c. 265, § 26C, "it is of no
consequence that [the child] was not a real person, because 'factual
impossibility is not a defense to a crime'").[7]  Accordingly, as the Appeals Court concluded,
the Superior Court judge erred in dismissing the indictments on that
basis.  See Garafalo, 104 Mass. App. Ct.
at 164-166.
      c. 
Trafficking of persons for sexual servitude.  We turn to the question whether the conduct
of responding to the advertisements for commercial sexual services, agreeing to
the terms of the proposed sexual tryst, and going to the locale set by the sex
worker for the performance of the services comprised "the crime of
trafficking of persons for sexual servitude."  G. L. c. 265, § 50 (a).  The Commonwealth contends that such conduct
supports probable cause that the defendants each attempted "to recruit,
entice, . . . or obtain by any means" the sex worker, as proscribed by the
statute.  Id.
      i. 
Attempt to entice and to recruit. 
Relying on our prior case law, we readily dispose of the Commonwealth's
argument that the defendants' conduct constituted an attempt to
"entice" or to "recruit," each of which requires conduct by
the perpetrator aimed to persuade the recipient.  See Commonwealth v. Dabney, 478 Mass. 839,
856, cert. denied, 586 U.S. 846 (2018) ("Evidence introduced at trial
showed that the victim returned to prostitution following the defendant's
specific encouragement"); Commonwealth v. McGhee, 472 Mass. 405, 416
(2015) (statute requires "knowing commission of specified acts for the
purpose of enabling or causing another person to engage in commercial sexual
activity").
      [We have explained that "entice"
means to allure, to attract, or to tempt. 
See Dabney, 478 Mass. at 855, quoting Webster's Third New International
Dictionary 757 (1993) (noting dictionary definitions of "entice,"
meaning "to 'incite,' 'instigate,' 'draw on by arousing hope or desire,'
'allure,' 'attract,' 'draw into evil ways,' 'lead astray,' or 'tempt'").[8]  "[O]ne may entice, for example, simply
by making an attractive offer."[9] 
Dabney, supra at 856.  Similarly,
the word "recruit" connotes conduct intended to persuade one to join
a scheme, organization, or enterprise.[10] 
See Cambridge Dictionary Online,
https://dictionary.cambridge.org/dictionary/english/recruit
[https://perma.cc/YK6W-65RR] ("recruit" means "to persuade
someone to work for a company or become a new member of an organization").
      Importantly, although the terms
"entice" and "recruit" require proof that the defendant
engaged in conduct aimed at alluring, attracting, tempting, or persuading the
victim to engage in commercial sexual activity, we reject the defendants'
additional suggestion that these acts require proof of the victim's state of
mind.  As we have repeatedly stated, the
central focus of the statute is the defendant's conduct and the defendant's
state of mind; whether the victim was predisposed or otherwise willing to
engage in commercial sexual activity is not an element of the crime proscribed.[11]  See, e.g., Dabney, 478 Mass. at 856 (in
connection with determination that defendant "enticed" and
"recruited" victim, stating that "[t]he fact that . . . the
victim had been engaged in prostitution . . . before she met the
defendant does not insulate him"); McGhee, 472 Mass. at 426-427 ("[I]t
was irrelevant whether [the victim] was a willing participant in the
defendants' activities.  The exclusion of
evidence pertaining to [the victim's] alleged history of prostitution had no
bearing on whether the defendants violated G. L. c. 265, § 50
[a]").  Contrast G. L.
c. 265, § 53 (crime of "organ trafficking" expressly
provides that defendant intend or know that removal for sale of organ, tissue,
or other body part was "against such person's will").
      Of course, the perpetrator's conduct need
not rise to the level of "force, fraud, [or] coercion," an element
set forth in 18 U.S.C. § 1591 (Federal sex trafficking statute) but absent
in the State statute.  See 18 U.S.C.
§ 1591(a) (where victim has attained eighteen years of age, requiring that
defendant knew or recklessly disregarded "the fact . . . that
means of force, threats of force, fraud, coercion . . . or any
combination of such means will be used to cause the person to engage in a
commercial sex act").  See McGhee,
472 Mass. at 413 n.8, quoting Globe Newspaper Co. v. Boston Retirement Bd., 388
Mass. 427, 433 (1983) ("We point out that the omission of language from
G. L. c. 265, § 50 [a], that is included in the previously
enacted analogous Federal [sex trafficking] statute 'reflect[s] a conscious
decision by the Legislature to deviate from the standard embodied in the
Federal [sex trafficking] statute'"). 
See also Dabney, 478 Mass. at 854-855 (same).  A person may "entice" or
"recruit" another to engage in commercial sexual activity through,
for example, words or acts of encouragement, assistance, incentives, gifts,
money, housing, benefits, promises, drugs, or alcohol, without engaging in
threats of serious harm (coercion), physical force, or fraud.
      Here, however, the defendants are not
alleged to have engaged in conduct aimed to allure, to attract, to tempt, or to
persuade the sex worker to engage in commercial sexual activity.  Nothing in the telephone calls or text
message interactions between the defendants and the sex worker reasonably
suggests any effort by the defendants to allure, to attract, to tempt, or to
persuade the sex worker to engage in commercial sexual activity; instead, in
those calls and messages, they selected sexual activities from a menu of
activities she proposed.  Thereafter, the
defendants each accepted the terms -- price, time, and location -- as dictated
by the purported sex worker.  Such
responsive acceptance of the terms extended by the sex worker cannot reasonably
be found to be conduct aimed to entice or to recruit the sex worker.
      ii. 
Attempt to obtain by any means. 
We turn next to the Commonwealth's contention that the defendants'
conduct fell within the phrase to "obtain by any means" a sex worker
to engage in commercial sexual activity. 
The Commonwealth asserts that the verb "obtain" means to get
or to acquire and, here, the defendants each attempted to get a sex worker by
responding to the advertisement.
      To be sure, the definition of
"obtain" is broad.  Generally,
as the Commonwealth notes, the word "obtain" means to get, to acquire,
to secure, or to attain possession of. 
See Webster's Third New International Dictionary 1559 (1993)
("obtain" means "to gain or attain possession of or disposal of
usu[ally] by some planned action or method"); Oxford English Dictionary
Online ("obtain" means "[t]o come into the possession of; to
procure; to get, acquire, or secure"). 
The modification "by any means" suggests the Legislature
intended to capture a wide range of conduct related to trafficking persons for
sexual servitude.  See Department of
Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002) ("[T]he word
'any' has an expansive meaning, that is, one or some indiscriminately of
whatever kind" [quotation and citation omitted]); United States v.
Jungers, 702 F.3d 1066, 1070-1071 (8th Cir.), cert. denied sub nom. Bonestroo
v. United States, 571 U.S. 866 (2013) (Jungers II) (rejecting "restrictive
interpretation" of enumerated means in Federal sex trafficking statute
because terms "whoever" and "any" "are expansive"
[citation omitted]).  Thus, at least as
an initial matter, the Commonwealth's construction of the phrase "obtain
by any means" as meaning to acquire a sex worker by whatever method is
reasonable given the breadth of the phrase "obtain by any means."  Indeed, without purchasers, including the
purchasers whose conduct is responding to an offer for commercial sexual
activity, the demand side of the business of sex trafficking would be thwarted,
which arguably furthers the apparent legislative intent to punish those who
participate "by any means" in trafficking of persons for sexual
servitude.
      The Commonwealth's proposed construction
becomes less supportable when the phrase "obtain by any means" is
read, as it must be, in the context of the statute as a whole.  See Garcia, 492 Mass. at 326.  Significantly, the phrase "obtain by any
means" comes at the end of a list that includes, as discussed supra,
"entice" and "recruit," as well as "harbor,"
"transport," and "provide."[12]  G. L. c. 265,
§ 50 (a).  Each of these acts
describes stages in the business of sex trafficking.  The illicit operation may start with
traffickers who engage in conduct to "recruit" and to
"entice" victims, luring victims to participate in the business to
build the "supply" necessary for the conduct of a sex trafficking
scheme.  Once the supply of sex workers
is acquired, the same or other traffickers might "harbor" the victim,
giving shelter or refuge to the victim to keep the victim within the
"supply chain" of the operation. 
The same or a different trafficker might then "transport" the
victim, acting as a "distributor" in the trafficking operation.  And a trafficker may "provide" the
victim to either another trafficker, such as a pimp, or to the ultimate
"consumer," and in that way act like a "retailer" in the
sex trafficking business.
      Because each of the enumerated acts
describes a step in the operation of trafficking of persons for sexual
servitude, the traditional canon of construction, noscitur a sociis, informs
our construction of the final phrase "obtain by any means."[13]  That canon "counsels that a word is
given more precise content by the neighboring words with which it is
associated.  Noscitur a sociis means
literally 'it is known from its associates,' and means practically that a word
may be defined by an accompanying word, and that, ordinarily, the coupling of
words denotes an intention that they should be understood in the same general
sense."  (Footnotes omitted.)  2A N.J. Singer & J.D. Shambie Singer,
Statutes and Statutory Construction § 47:16 (7th ed. 2021 & Nov. 2024
update).  See Outfront Media LLC v.
Assessors of Boston, 493 Mass. 811, 818 (2024), quoting Richardson v. UPS
Store, Inc., 486 Mass. 126, 130-131 (2020) (noscitur a sociis "counsels
that terms must be read within the context of the statute in which they
appear. . . .  The literal
meaning of a general term in an enactment must be limited so as not to include
matters that, although within the letter of the enactment, do not fairly come
within its spirit and intent").  See
also Dole v. United Steelworkers of Am., 494 U.S. 26, 36 (1990) ("That a
more limited reading of the phrase . . . was intended derives
some further support from the words surrounding it").
      Applying this canon to the phrase
"obtain by any means," it is ambiguous, in the context of the
preceding verbs describing the steps of an operation of a sex trafficking
business, whether the Legislature intended to capture a purchaser of services
offered by an ostensibly independent sex worker.  Indeed, the phrase "obtain by any
means" reasonably may be construed to capture the conduct of an individual
who "gets" by whatever means a victim to participate in a sex
trafficking business even if those means do not fall within the previously
listed acts of enticing, recruiting, harboring, transporting, or providing the
trafficked person.[14]  In short, the
breadth of the Commonwealth's proposed construction of the phrase "obtain
by any means" to capture the conduct alleged here arguably is at odds with
the language of the sex trafficking statute as a whole, which delineates
specific enumerated acts of those who engage in the steps of the business of
buying and selling human beings for sexual exploitation rather than at
purchasers who agree to pay an independent sex worker for sexual activities she
has offered on the terms she has set.
      Nor does the statute's title,
"Trafficking of persons for sexual servitude," clearly suggest that
the Legislature sought to capture the conduct at issue in this case.  See G. L. c. 265, § 50 (a).  See, e.g., Young v. Contributory Retirement
Appeal Bd., 486 Mass. 1, 10 (2020), citing Olmstead v. Department of Telecomm.
& Cable, 466 Mass. 582, 589 & n.12 (2013) (where text of statute is
ambiguous, title of act may be relevant to statutory interpretation).  The title indicates that the statute is meant
to encompass activity related to the operation of a sex trafficking scheme –-
that is, the trade, both buying and selling, of human beings for sexual
exploitation.[15]  Consistent with this
title, we have previously stated that the statute is designed "to protect
victims of sex trafficking." 
McGhee, 472 Mass. at 419-420 ("The purpose and intent of the
Legislature in enacting [the sex trafficking statute,] G. L. c. 265,
§ 50 [a], was to prohibit the trafficking of persons for sexual servitude,
not to prohibit all range of sexually oriented activities and expressions"
[emphasis added]).  The title does not
evince an obvious intent to capture that subset of purchasers of commercial
sexual activity who respond to an offer from an independently operating sex
worker.
      iii. 
Legislative history.  Given the
ambiguity in the plain meaning of the phrase "obtain by any means,"
when viewed in the context of the statute as a whole, we turn to the statute's
legislative history to determine whether the history clarifies the
Legislature's intent.  See HSBC Bank USA,
N.A. v. Morris, 490 Mass. 322, 332-333 (2022), quoting Chandler v. County
Comm'rs of Nantucket County, 437 Mass. 430, 435 (2002) ("Where the
statutory language is not conclusive, we may 'turn to extrinsic sources,
including the legislative history and other statutes, for assistance in our
interpretation'").
      As we have noted, the legislative history
shows that the Legislature enacted the sex trafficking statute in 2011 to
empower State and local law enforcement to combat the relatively smaller human
trafficking operations in the Commonwealth, which had not been the focus of
Federal law enforcement efforts under the Federal sex trafficking statute.  See Dabney, 478 Mass. at 852-853.  Indeed, the list of enumerated acts in the
State sex trafficking statute largely mirrored that of the then-existing
Federal sex trafficking statute.  Compare
18 U.S.C. § 1591(a)(1) (2006) ("Whoever
knowingly . . . recruits, entices, harbors, transports,
provides, obtains, or maintains[16] by any means . . .")
with G. L. c. 265, § 50 (a) ("Whoever
knowingly . . . recruits, entices, harbors, transports,
provides, or obtains by any means . . .").  Significantly, the words "obtains"
and "by any means" appear in both.
      Thus, the legislative history of the
Federal sex trafficking statute is a helpful source of our Legislature's
intent.  See Dorrian v. LVNV Funding,
LLC, 479 Mass. 265, 272-273 (2018) ("For further guidance we turn to the
legislative history of the [Federal statute], which is relevant to our
consideration because the [Federal statute] was the model for the [State
statute]").  Specifically, in
enacting the Federal statute, Congress stated:
"Existing
legislation and law enforcement in the United States and other countries are
inadequate to deter trafficking and bring traffickers to justice, failing to
reflect the gravity of the offenses involved. 
No comprehensive law exists in the United States that penalizes the
range of offenses involved in the trafficking scheme.  Instead, even the most brutal instances of
trafficking in the sex industry are often punished under laws that also apply
to lesser offenses, so that traffickers typically escape deserved
punishment."
22 U.S.C.
§ 7101(b)(14).  In other words, the
Federal sex trafficking statute was meant to fill a perceived gap in existing
laws designed for lesser offenses that, in Congress's view, meted punishments
inadequate to deter human trafficking. 
Thus, Congress passed the Federal sex trafficking statute to target
human trafficking, which Congress concluded "involves sexual exploitation
of persons . . . involving activities related to prostitution
. . . and other commercial sexual services."  Trafficking Victims Protection Act of 2000,
Pub. L. No. 106-386, § 102(b)(2).
      Because the Legislature intended that the
sex trafficking statute empower State and local law enforcement to combat the
smaller sex trafficking schemes that fell within the Federal law[17] but that
Federal law enforcement efforts had not had the resources to pursue, it follows
that the Legislature intended the sex trafficking statute to fill the same
perceived gap in existing laws used against sex traffickers at the State level.  It is instructive, then, that the type of
conduct in which the defendants here are alleged to have engaged already was
proscribed expressly by the existing sex for a fee statute.  See G. L. c. 272, § 53A.
      It is also notable that when the
Legislature enacted the sex trafficking statute, it simultaneously increased
the punishment for purchasers of commercial sex under the existing sex for a
fee statute.  See G. L. c. 272,
§ 53A.  Specifically, the
Legislature increased the punishment for a violation of the sex for a fee
statute from a maximum of one year in a house of correction to a maximum of two
and one-half years in a house of correction. 
See St. 2011, c. 178, § 25.  By
contrast, a violation of the sex trafficking statute carries with it a
five-year mandatory minimum sentence. 
See G. L. c. 265, § 50.[18]
      This context supports the conclusion that
the Legislature intended the sex trafficking statute to target the conduct of
suppliers and purchasers who perpetrate the operation of trafficking of persons
for sexual servitude, rather than the responsive conduct of the subset of
purchasers of commercial sexual activity who answer advertisements by an
independent adult sex worker.  The latter
conduct already was proscribed by the sex for a fee statute and further
addressed by the Legislature through increased penalties for that crime,
indicating that the subset of purchasers already targeted by the sex for a fee
statute were not considered to be covered by the new sex trafficking statute.
      We are also informed by Federal courts'
constructions of the phrase "obtain[] . . . by any means"
in the Federal statute.   See
Commonwealth v. Braune, 481 Mass. 304, 308 (2019), quoting Commonwealth v.
Eberhart, 461 Mass. 809, 815 (2012) (where "State statute 'largely replicates'
a cognate provision of Federal law, we consider the Federal courts'
interpretation of the Federal statute 'highly persuasive' in interpreting our
own law").[19]  It is telling that
the Federal courts have come to different conclusions whether the phrase
"obtain[] . . . by any means" in the Federal statute
extends to capture responsive conduct akin, in some respects, to the conduct at
issue here.  Compare United States v.
Jungers, 834 F. Supp. 2d 930, 934 (D.S.D. 2011) (Jungers I) (concluding that
"obtain[] . . . by any means" in Federal statute did not
capture conduct of purchaser who responded to advertisement requesting
commercial sex with minor), Fierro vs. Taylor, U.S. Dist. Ct., No. 11 Civ. 8573
(S.D.N.Y. July 2, 2012) (in context of civil case, concluding that
"obtain[] . . . by any means" in Federal statute did not
apply to those who purchase sex with victims of trafficking), and United States
vs. Bonestroo, U.S. Dist. Ct., No. CR 11-40016-01-KES (D.S.D. Jan. 4, 2012)
(concluding that "obtain[] . . . by any means" in Federal
statute did not capture conduct of purchaser who responded to advertisement
requesting commercial sex with minor), with Jungers II, 702 F.3d at 1075-1076
(concluding that Federal statute applied to those who attempted to purchase sex
from minors, and reversing judgments of acquittal in Jungers I and Bonestroo).
      Recognizing that this split among the
Federal courts reflected an existing ambiguity in the phrase "obtain[]
. . . by any means," Congress amended the list of enumerated
means that comprise sex trafficking under the Federal statute in 2015.  Specifically, Congress added
"solicits" and "patronizes" to the list of enumerated
means, to make "absolutely clear for judges, juries, prosecutors, and law
enforcement officials that criminals who purchase sexual acts from human
trafficking victims may be arrested, prosecuted, and convicted as sex
trafficking offenders when this is merited by the facts of a particular
case."  Justice for Victims of
Trafficking Act of 2015, Pub. L. No. 114-22, § 109,
https://www.govinfo.gov/content
/pkg/PLAW-114publ22/html/PLAW-114publ22.htm
[https://perma.cc
/7TA7-WS3J].  Our Legislature has not similarly amended the
State counterpart to add the verbs "solicits" and
"patronizes."[20]  See
G. L. c. 265, § 50 (a).
      Absent clarification by our Legislature,
we cannot conclude that the sex trafficking statute unambiguously captures
those, like the defendants in this case, who respond to an advertisement by an
independent adult for commercial sex and accept without negotiation the terms
set forth by the sex worker.  Indeed,
there is no indication here that the defendants were participating in a sex
trafficking scheme, particularly where the purported adult sex worker asserted
that she was independent and expressly declared for herself the "right not
to enter into any arrangement . . . for any . . . reason at
[her] sole discretion."
      "[W]here the language of a criminal
statute plausibly can be found ambiguous, the rule of lenity requires that the
defendant receive the benefit of the ambiguity."  Commonwealth v. Dayton, 477 Mass. 224, 226
(2017).  Applying the rule of lenity, we
interpret the statute as not applying to this subset of purchasers engaged in
the conduct alleged here.  See id.
      3. 
Conclusion.  For the foregoing
reasons, we affirm the dismissal of the defendants' indictments charging
trafficking of persons for sexual servitude under G. L. c. 265,
§ 50 (a), and remand for further proceedings on the remaining indictments.[21]
So ordered.

footnotes
[1] One against
Brandon J. Garafalo and two each against Brian D. Dick, Eric P. VanRiper, James
Bi, and Viet H. Nguyen.

[2] We
acknowledge the amicus brief submitted by the Attorney General.

[3] "We
recite the facts presented to the grand jury in the light most favorable to the
Commonwealth . . . ." 
Commonwealth v. Clinton, 491 Mass. 756, 758 (2023).

[4] There were
two online advertisements; as relevant to our analysis, however, the details of
each were the same.

[5] In
Commonwealth v. McCarthy, 385 Mass. 160, 163 (1980), we set forth the standard
for a defendant to challenge whether the proof before the grand jury was
insufficient to "establish the identity of the
accused . . . and probable cause to arrest him."  If "the grand jury did not have before
it any evidence of criminality by the defendant," the indictment must be
dismissed to protect "against unfounded criminal prosecutions."  Id., quoting Lataille v. District Court of E.
Hampden, 366 Mass. 525, 532 (1974).

[6] "Factual
impossibility occurs when the objective of the defendant is proscribed by the
criminal law but a [physical] circumstance unknown to the [defendant] prevents
him from [accomplishing] that [intended] objective" (citation omitted).  Commonwealth v. Bell, 67 Mass. App. Ct. 266,
270 (2006).  In the context of charges
arising out of undercover sting operations, "[w]hether the targeted victim
. . . [actually exists], the defendant's conduct, intent,
culpability, and dangerousness are all exactly the same" (citation
omitted).  Id. at 271.  To be sure, the defendants couch their
argument in terms of the absence of the element of "another person";
however, this characterization does not alter the crux of their claim, which is
one of factual impossibility.

[7] The
defendants' reliance on our decision in Commonwealth v. Fan, 490 Mass. 433, 448
(2022), is misplaced.  There, in
connection with the prosecution of a brothel owner, we concluded that the
Commonwealth need not prove the identity of the victims who were trafficked
with particularity.  Id. at 453-454.  Instead, it was sufficient for the
Commonwealth to show that a victim was trafficked.  Id.  We
did not address, much less alter, the basic principle of law that factual
impossibility is not a defense to an attempt crime.

[8] See also Oxford English Dictionary Online ("entice" means
"to allure, attract by the offer of pleasure or advantage; esp[ecially] to
allure insidiously or adroitly"). 
See generally G. L. c. 265, § 26C ("entice" as
used in crime of enticing child under age sixteen "shall mean to lure,
induce, persuade, tempt, incite, solicit, coax or invite"); G. L.
c. 265, § 26D (same for crime of enticement of child under age
eighteen to engage in prostitution, human trafficking, or commercial sexual
activity).

[9] Our decision in Dabney is instructive. 
There, the defendant told the victim, a person who previously had been a
sex worker, "that she was beautiful and would make 'good money' from
prostitution, controlled the terms of her client visits, encouraged her to
advertise on Backpage, [a website that allows users to create posts offering
various products and services,] and helped her pay for and set up the Backpage
account."  Dabney, 478 Mass. at
854.  We concluded that the defendant's
conduct aimed to persuade the victim to engage in commercial sexual activity
and thus fell within the scope of the terms "entice" and
"recruit."  See id.  See also McGhee, 472 Mass. at 409-410 ("the
defendants started talking with [the victim] about a business arrangement
whereby she could 'make a lot of money,' 'have a nice car,' and 'have a nice
apartment,'" which victim understood as engaging in prostitution).

[10] Seizing on
our reference in Dabney to dictionary definitions of the term
"recruit" as "to 'hire or otherwise obtain to perform services,'
[or] to 'secure the services of' another" (citation omitted), Dabney, 478
Mass. at 856, the Commonwealth contends that "recruit" captures the
defendants' conduct because they each attempted to hire the sex worker.  This argument fails to consider that, in
addition to these definitions, we simultaneously noted definitions of the term
"recruit" to mean "to 'muster,' 'raise,' or 'enlist.'"  Id., quoting Webster's Third New International
Dictionary 1899 (1993).  These latter
terms inform the type of "hiring" conduct captured by the term
"recruit," which, as set forth supra, requires conduct intended to
persuade someone to join a scheme, organization, or enterprise.  See Cambridge Dictionary Online,
https://dictionary.cambridge.org/dictionary/english/recruit
[https://perma.cc/YK6W-65RR].  See also
Oxford English Dictionary Online ("recruit" means "to induce [an
athlete] to enrol[l] at a college or university").

[11] The elements
of the crime of trafficking of persons for sexual servitude are that a
defendant "(1) knowingly (2) 'enabled or caused,' by one of the
statutorily enumerated means, (3) another person (4) to engage in commercial
sexual activity."  Fan, 490 Mass. at
448.

[12] These
enumerated acts when done knowingly and culminating in commercial sexual
activity expressly define "the crime of trafficking of persons for sexual
servitude."  See G. L.
c. 265, § 50 (a).  See
note 11, supra.

[13] In its
construction of the phrase "obtain by any means," the Appeals Court
applied the related canon of ejusdem generis, which means "of the same
kind or class" (citation omitted). 
Commonwealth v. Perez Narvaez, 490 Mass. 807, 814 (2022).  See 2A N.J. Singer & J.D. Shambie Singer,
Statutes and Statutory Construction § 47:17 (7th ed. 2021 & Nov. 2024
update) (Sutherland) (describing ejusdem generis doctrine as "variation of
the maxim noscitur a sociis").  The
canon of ejusdem generis provides that, "[w]here general words follow
specific words in a statutory enumeration, the general words are construed to
embrace only objects similar in nature to those objects enumerated by the
preceding specific words."  Perez Narvaez,
supra, quoting Banushi v. Dorfman, 438 Mass. 242, 244 (2002) (applying doctrine
to limit phrase "other noxious or filthy substance").  Courts "typically use ejusdem generis to
ensure that a general word will not render specific words
meaningless."  CSX Transp., Inc. v.
Alabama Dep't of Revenue, 562 U.S. 277, 295 (2011) (declining to apply doctrine
to list of distinct prohibitions).  See
Sutherland, supra ("ejusdem generis seeks to reconcile an incompatibility
between specific and general words"). 
Because we do not conclude that the phrase "obtain by any
means" generically captures each of the enumerated acts that precede it,
we do not apply this canon.  To the
extent the Appeals Court's application of ejusdem generis suggests that the
enumerated acts set forth in the sex trafficking statute require changing the
victim's will or that the victim's state of mind is an element of the offense
proscribed by the statute, we disagree. 
See discussion supra.

[14] Our case law
addressing the sex trafficking statute has not extended its reach to those who
purchase sex from an independent sex worker. 
Instead, our cases have involved the conduct of boyfriends, pimps, and
brothel owners who in some manner have encouraged or exploited another person
for purposes of commercial sexual activity. 
See, e.g., Fan, 490 Mass. at 435-436 (describing conduct of defendant
brothel owners); Dabney, 478 Mass. at 840-844 (describing conduct of defendant
who "enticed" and "recruited" victim to engage in
commercial sex with others); McGhee, 472 Mass. at 408-412 (describing
"pimping" activities of defendants). 
In McGhee, for example, the defendant supplied the victim with heroin
before discussing a "business arrangement" involving prostitution,
took photographs of the victim and posted them in an online advertisement,
listed one defendant's cellular telephone number as the contact in the
advertisement, coached the victim on what to say when speaking to callers
responding to the advertisement, established prices for the victim's sexual
services, walked the victim to the location where she was to perform said
services, confiscated any money the victim received, and provided the victim
with drugs and alcohol.  McGhee, supra at
409-410.  We stated that such conduct
"fell squarely within the conduct unambiguously proscribed by [the sex
trafficking statute,] G. L. c. 265, § 50 (a)."  Id. at 416.

[15]
"Trafficking" means the activity of engaging in trade, which includes
both buying and selling.  See Merriam-Webster
Online Dictionary, https://www.merriam-webster.com/dictionary
/traffic
[https://perma.cc/87C6-URD7] ("trafficking" means "the business
of bartering or buying and selling"); Oxford English Dictionary Online
("trafficking" means "illegal or illicit trade or dealing,
esp[ecially] the distribution and sale of illegal drugs, or the trade in or
procurement of human beings, typically for the purpose of exploitation");
Oxford English Dictionary Online ("traffic" means "[t]o trade in
or procure human beings for the purpose of . . .
exploitation").  See also Oxford
English Dictionary Online ("sex trafficking" means "the action
or practice of coercing people into prostitution, pornography, or other forms
of commercial sexual exploitation, usually involving illegal or forcible
relocation").  We set forth these
dictionary definitions to inform our construction of the phrase "obtain by
any means" in the context of the delineated acts constituting
"trafficking" under the sex trafficking statute; although certain
dictionary definitions suggest the use of force, coercion, or fraud, the
Commonwealth's sex trafficking statute explicitly does not.  See McGhee, 472 Mass. at 413 n.8.

[16]
"Maintains" is not included in the Commonwealth's sex trafficking
statute.

[17] As discussed
supra, unlike the Federal sex trafficking statute, our State statute does not
require "force, fraud, [or] coercion."  See McGhee, 472 Mass. at 413 n.8.

[18] While
isolated statements of legislators may not speak for the Legislature as a
whole, it is notable that when discussing the importance of the broader act to
combat human trafficking within the Commonwealth, a proponent noted that
separately "[w]e also increased the penalties for the johns," in
reference to the sex for a fee statute. 
State House News Service (Sen. Sess.), Nov. 15, 2011 (statement of Sen.
Mark C. Montigny).  The Attorney General
also distinguished between the two statutes, testifying before the Joint
Committee on the Judiciary that "[i]n order to address the continued
supply of victims, this bill creates the crime of trafficking of persons for
sexual servitude, with a penalty of up to [twenty] years in [S]tate
prison. . . .  To stem the
demand side, the bill increases penalties for current 'John' crimes."  Testimony of Attorney General Martha Coakley
on S.827/H.2850, An Act Relative to the Commercial Exploitation of People (May
18, 2011).

[19] The State
statute does not mirror the Federal statute entirely.  For example, as we have observed, the State
statute does not require that the perpetrator know that the victim was caused
to engage in commercial sexual activity through coercion, force, or fraud.  See McGhee, 472 Mass. at 415.  In this regard, our State statute is more
akin to the portion of the Federal statute dealing with children who are
victims of sex trafficking.  Compare 18
U.S.C. § 1591(a) (requiring only that defendant knew or recklessly
disregarded "that the person has not yet attained the age of [eighteen]
years and will be caused to engage in a commercial sex act") with
G. L. c. 265, § 50 (a). 
For this reason, the Federal case law addressing the Federal child sex
trafficking law is particularly illuminating.

[20] In contrast,
several other States have included these terms in their sex trafficking
statutes.  See, e.g., Ala. Code
§ 13A-6-152 (includes "solicits"); Del. Code. Ann. tit. 11,
§ 787 (amended to include same); N.C. Gen. Stat. § 14-43.11 (amended
to include "solicits" and "patronizes"); 18 Pa. Cons. Stat.
§ 3011 (includes same).

[21] That the
defendants did not engage in sex trafficking does not absolve them of being
prosecuted for the crime the grand jury were warranted in finding probable
cause that they did commit:  engaging in
sexual conduct for a fee in violation of G. L. c. 272, § 53A
(sex for a fee statute).